[Doc. No. 84]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| In Re:<br><br>CATERPILLAR INC., C13 AND C15 ENGINE PRODUCTIONS LIABILITY LITIGATION | MDL No. 2540<br><br>Master Docket No. 14-3722 (JBS/JS) |
| SALUD SERVICES, INC.,<br>Plaintiff,<br><br>v.<br><br>CATERPILLAR, INC.,<br>Defendant. | 14-3734 (JBS/JS) |

**OPINION**

This Opinion addresses whether plaintiffs will be granted leave to amend their consolidated MDL complaint to add more plaintiffs, change their class definition, and clarify their theory of the case insofar as their defect claim is concerned. The motion comes on the heels of the first case management conference where the Court essentially adopted plaintiffs' case management proposal. The major complication resulting from plaintiffs' motion is that it will result in a substantial change to the present case management structure and it will temporarily moot a number of substantive motions that are

pending. Thus, the Court is faced with the question of whether it should proceed on its present course or whether it should make a major change which is likely to save resources and time in the future but which will result in some short term inefficiencies. For the reasons to be discussed, plaintiffs' motion will be granted.[1]

Background

This matter is a consolidated multi-district litigation ("MDL") involving Caterpillar's MYCAT 2007 engines. The MDL involves sixteen complaints filed in different federal district courts. At issue are two engine models, C13 and C15, used to power trucks, buses and other heavy equipment. The subject MDL Order was issued on June 11, 2014.[2]

Before the cases were consolidated the first filed Salud matter docketed in the Southern District of Florida on October 10, 2012, had progressed the farthest. That case only involved a proposed class of purchasers or lessees of C13 bus engines in Florida, Tennessee, Illinois, Texas and Indiana. After discovery was taken, and on the eve of the deadline for the plaintiffs to

[1] This matter is before the Court on plaintiffs' "Motion for Leave to File Amended Consolidated Class Action Complaint" [Doc. No. 84]. The Court received defendant's opposition [Doc. No. 93] and held oral argument on December 10, 2014.

[2] Caterpillar moved for consolidation on March 18, 2014. See June 11, 2014 Transfer Order [Doc. No. 1]. Plaintiffs supported consolidation. In Caterpillar's motion to transfer it stated "[c]onsolidation of the actions before a single court will conserve judicial resources, reduce the costs of litigation, prevent potentially inconsistent pretrial rulings, eliminate duplicative discovery, and permit the cases to proceed to trial more efficiently." [C.A. No. 14-3734, Doc. No. 162-1 ¶ 6].

file their motion for class certification and for defendant to file their motion to dismiss, the MDL Order was entered. At that point, the Salud plaintiffs had filed their third amended complaint following the granting of defendant's motion to dismiss. Two months later, the Salud plaintiffs moved to file a fourth amended complaint seeking to expand their putative class definition beyond buses to include all vehicles. The Honorable Patricia A. Seitz denied the motion, finding that good cause did not exist to permit the amendment because plaintiffs were aware prior to the deadline to amend pleadings that non-bus vehicles were also potentially at issue. When the MDL Order was entered the BK Trucking case filed in the District of New Jersey on April 2, 2013, also progressed past the pleading stage and into the discovery phase. Unlike Salud, BK Trucking addressed purchasers of C13 and C15 truck engines in New Jersey, Illinois and Ohio.

The first comprehensive case management conference in the MDL was held on August 5, 2014, which resulted in the entry of Case Management Order ("CMO") No. 2 on August 8, 2014. At plaintiffs' request the Salud bus engine case became the "bellwether." CMO No. 2 included deadlines for the filing of plaintiffs' motion for class certification and defendant's motion to dismiss in Salud. See CMO No. 2 at ¶ 2. The CMO also provided that the other bus engine cases would be temporarily

stayed (¶ 3), and that no new discovery could be taken in the truck cases until plaintiffs' Consolidated Class Action Complaint ("CCAC") was filed (¶ 5).

Plaintiffs filed their Salud motion for class certification on August 19, 2014 and their Consolidated Class Action Complaint ("CCAC") on October 16, 2014. Thereafter, defendant filed its Salud motions to dismiss and for summary judgment on November 3, 2014. Defendant also filed four motions to exclude the reports, testimony and declarations of the experts the Salud plaintiffs relied upon in support of their motion for class certification. After defendant's motions were filed plaintiffs complained they learned about relevant discovery that defendant should have produced earlier. Specifically, plaintiffs point to the 60-page Declaration of Charles R. Smock which Caterpillar attached to its opposition to class certification. Plaintiffs claim the Smock Declaration contains critical information regarding warranty data and engineering reviews previously unknown to them. Plaintiffs contend that because of what they recently learned discovery needs to be opened up in Salud in order for them to obtain a complete record for their certification motion. Defendant denies plaintiffs' assertion but has agreed to produce some additional discovery, including making its affiant, Charles R. Smock, available for deposition.

The procedural history described above has resulted in the de facto organization of these consolidated cases into three groups. The first group is the Salud bus case involving only C13 engines. The second group is the bus cases that have been stayed. See CMO No. ¶ 3. The third group is the remaining truck cases involving C13 and C15 engines.

On November 14, 2014, the Court held a status conference to address case management and discovery issues. At the conference plaintiffs argued there were no material differences between C13 and C15 truck and bus engines.[3] This being the case the Court questioned why plaintiffs chose to treat the truck and bus cases differently. This apparently led plaintiffs to reflect on their earlier case management decisions and to conclude that the present motion to amend was appropriate. Plaintiffs candidly acknowledged that the distinction between C13 and C15 engines was "a little artificial" and advocated putting "Humpty Dumpty back together[.]" Nov. 14, 2014 Tr. 20:10-19 [Doc. No. 90].[4]

According to plaintiffs their motion requests leave to make two amendments: (1) to amend the class definition to include the truck plaintiffs and the new bus plaintiffs, and (2) to clarify plaintiffs' claims as they relate to express warranties

[3] Plaintiffs incorrectly indicate in their memorandum that the Court noted at the hearing that the C13 and C15 engines were "basically the same." Pls.' Br. at 4. To the contrary, the Court made no such finding.

[4] It is not unheard of for parties to change their case management strategies. In the BK Trucking case defendant initially resisted plaintiffs' efforts to coordinate the discovery in Salud and BK Trucking.

regarding workmanship and material, implied warranty disclaimers, and design defects. Pls.' Br. at 1. [Doc. No. 84-1].[5] As to this later change plaintiffs write:

> Specifically, Plaintiffs seek to clarify that the defects at issue relate to an overall poor design choice—a single defect that spans C13 and C15 MY2007 CAT Engines, regardless of engine type or application.

Id. In essence, plaintiffs now want to include all present MDL plaintiffs in the class definition. That is, they want to bring truck and bus owners of C13 and C15 engines under the same umbrella.[6] Plaintiffs also want to clarify their defect claim. Plaintiffs argue they are seeking:

> to propose an amended complaint to cover all of the Plaintiffs in the MDL and to focus on the common design defect with the CAT MY 2007 engines—specifically that the CRS is not sufficiently robust to manage all of the emissions control in real-world applications of the CAT engines. The result is the frequent failure of the emissions control system to remove particulate as anticipated, and the engines shutting down and requiring repair. Since this defect pervades all of the C13 and C15 engines, regardless of whether the engine is used by the truck or bus,

[5] The third amended complaint in Salud defines the class as owners and lessors "who purchased or leased buses for us[e] in the transportation of passengers for hire, with a 2008, 2008, or 2009 ('2007-9') Caterpillar, Inc. C-13 or C-15 heavy duty on-highway diesel engine (collectively 'MY2007 CAT Engine') containing exhaust emission controls to reduce diesel engine exhaust emissions in compliance with the EPA's 2007 Heavy Duty On Highway Emissions Standard ('EPA 2007 Emissions Standard' or '2007 Standard')." [C.A. No. 14-3724, Doc. No. 119]. The proposed amended consolidated class action complaint defines the class as "users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of vehicles with a 2007, 2008, 2009 or 2010 C-13 or C-15 heavy duty on-highway diesel engine certified as compliant with the EPA's 2007 Heavy Duty On-Highway Emissions Standard ('2007 Emissions Standard') manufactured by Defendant, Caterpillar, Inc. ('CAT,' 'Caterpillar,' or 'Defendant')." [C.A. No. 14-3722, Doc. No. 84-2].

[6] The Court's references to "owners" refers generally to owners, lessors, users, and purchasers of the subject vehicles.

> Plaintiffs seek to amend the operative complaint to align all of the claims for more efficient administration.

Pls.' Br. at 4.

Defendant characterizes plaintiffs' amendments differently. Defendant argues that plaintiffs' amendments (1) revive claims previously abandoned or never asserted in Salud, (2) circumvent the Florida Court's October 10, 2013 Order that required them to file their Notice of Limitations of Damages, and (3) change and add other factual allegations. Def.'s Opp. at 3.

Plaintiffs argue their amendment would not result in undue delay, it is not made in bad faith, and they have no dilatory motive. Although recognizing that their amendment will result in some "backtracking" given the extensive motion practice thus far in Salud, plaintiffs nevertheless argue defendant is not prejudiced by their amendment. Defendant disagrees in part. Defendant is not objecting to plaintiffs' motion except insofar as it relates to Salud. Defendant argues that the Salud plaintiffs are bound by Judge Seitz's March 3, 2014 Order denying the expansion of the complaint to include non-bus vehicles, plaintiffs have not established good cause for their amendment, and the amendment is sought for tactical advantages which would result in prejudice to defendant.

Discussion

Pursuant to Fed. R. Civ. P. 15(a), leave to amend pleadings "shall be freely given when justice so requires." Leave shall be freely given in the absence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies in previous amendments, undue prejudice or futility of the amendment. Foman v. Davis, 371 U.S. 178, 182 (1962); see also Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). "[A]bsent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless 'denial [can] be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment.'" Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) (quoting Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173, 1196 (3d Cir. 1994)). An amendment sought pursuant to Rule 15(a) shall be permitted unless it would be inequitable or futile. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

1. Undue Delay

Plaintiffs did not unduly delay filing their motion to amend. Delay is "undue" when it places an unwarranted burden on the Court or if the plaintiff has had previous opportunities to amend. Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 803 (3d Cir. 2010). The question of undue delay requires that the movant's reasons for not amending sooner be examined.

Adams v. Gould, Inc., 739 F.3d 858, 868 (3d Cir. 1984). Although this MDL has not just started, the MDL is in its infancy. Defendant has not yet responded to the CCAC, the parties' document and ESI discovery is not close to completion, and no depositions have been taken yet in the MDL proceedings. Further, no present outside deadline exists to amend pleadings in this MDL proceeding. In addition, plaintiffs filed their motion right after the November 14, 2014 conference when they came to the realization that the present management schedule was not the most logical and efficient manner to manage the case. Based on these facts the Court finds that plaintiffs' motion was not unduly delayed.[7]

2. Prejudice

Defendant argues it is prejudiced by plaintiffs' amendment. The Court disagrees. Prejudice involves the irretrievable loss of evidence, the dimming of witnesses' memories, or the excessive irremediable burdens or costs imposed on the non-moving party if an amendment is granted. Briscoe v. Klaus, 538 F.3d 252, 259 (3d Cir. 2008) Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001). Prejudice also may include significantly delaying the resolution of the case. Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004). Incidental prejudice and delay are insufficient grounds on which to deny leave to amend. Transweb,

[7] Since there is no evidence that plaintiffs acted in bad faith or with a dilatory motive, this point will not be separately discussed.

LLC v. 3M Innovative Properties Co., C.A. No. 10-4413 (FSH), 2011 WL 2181189, at *8 (D.N.J. June 1, 2011). None of this will result from plaintiffs' amendment.

Defendant argues it will be prejudiced by plaintiffs' amendment because it has already invested substantial resources opposing plaintiffs' Salud class certification motion, filing its motions to dismiss and for summary judgment, and filing its motions to exclude plaintiffs' Salud experts. Defendant points out that the Court adopted plaintiffs' case management proposal and it is unfair to permit plaintiffs to change their strategy now. Although the Court understands the reasons for defendant's argument, the argument is not compelling. The fact of the matter is that if granted plaintiffs' motion will streamline and simplify the case and make it immeasurably easier to manage and litigate. See In re Urethane Antitrust Litig., 235 F.R.D. 507 (D. Kan. 2006) (court found no prejudice and permitted plaintiffs to amend complaint to change class definition in MDL proceeding where proposed second amended complaint was filed four months after consolidated amended complaint and more than a year after the original complaint). Rather than prejudicing defendant, plaintiffs' amendment will assist defendant in its goal to engage in efficient consolidated multi-district litigation.

The Court acknowledges that if plaintiffs' motion to amend is granted it temporarily moots the present outstanding motions. Also, that after the ACCAC is filed, motion practice will start anew. Nevertheless, although plaintiffs' amendment will result in some duplicative work and delay in a decision on important certification and dispositive issues, defendant overstates the resulting prejudice. Most of the work defendant has done to date will not go to waste and can be used when defendant renews its motion. Further, the decision on the renewed motions will result in only a relatively modest delay. Moreover, given plaintiffs' insistence that defendant's discovery responses are incomplete it is unlikely that plaintiffs' certification motion will be ripe for decision in the immediate near term. As a result, the minimal prejudice to defendant is more than offset by the efficiencies that will result from addressing all of defendant's engines in a comprehensive rather than piecemeal certification motion.

The Court discounts defendant's argument that it is disadvantaged because it "tipped its hand" on its defense strategies. The parties and their counsel are sophisticated litigators who are routinely involved in complex litigation of this type. It is unlikely that anything that has been argued to date is top secret or that a strategy or argument has been raised that was not anticipated. Ultimately, the certification

and dispositive issues in the case will be decided on the merits and not on whose expert affidavits were produced first.

3. Law of the Case

A major focus of defendant's opposition is that the Salud plaintiffs are bound by Judge Seitz's March 3, 2014 Order denying plaintiffs' motion to file a fourth amended complaint to combine the bus and truck plaintiffs. Def.'s Opp. at 16. Defendant asserts that the "law of the case" doctrine prohibits this Court from granting the amendments Judge Seitz denied.

The law of the case doctrine is an amorphous concept which generally holds that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). The Supreme Court explained that "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988). One of the "major polic[ies]" underlying the law of the case doctrine is "facilitating judicial economy by permitting a logical progression toward judgment." Weitzman v. Stein, 908 F. Supp. 187, 193 (S.D.N.Y. 1995) (internal citation omitted).

The Third Circuit has recognized several "extraordinary circumstances" which would permit revisiting a prior decision. Such circumstances exist where (1) new evidence is available; (2) a supervening new law has been announced; (3) the order clarifies or corrects an earlier, ambiguous ruling; and (4) where a prior ruling, even if unambiguous, might lead to an unjust result. In re Pharmacy Benefit Managers Antitrust Litig., 582 F.3d 432, 439 (3d Cir. 2009). The "new evidence" exception applies where the evidence "differs materially from the evidence of record when the issue was first decided and if it provides less support for that decision." Hamilton v. Leavy, 322 F.3d 776, 787 (3d Cir. 2003).

Here, circumstances have changed dramatically since Judge Seitz's March 3, 2014 Order was entered. If the Court were called upon to just decide whether the complaint in the stand alone Salud case should be granted the decision would be a "no brainer." The amendment would clearly be denied. However, since Judge Seitz's Order was entered, defendant applied for, and was granted, consolidation of sixteen separate federal complaints. At this stage, permitting the amendment is the most efficient way to centralize and unify all sixteen cases comprising this now-consolidated class action.

Further, as a result of recent developments and discovery, the Court finds it would be inequitable to bind plaintiffs to

the case management schedule reflected in CMO No. 2. Salud was chosen as the test case because it was the furthest advanced case when the Court and parties met on August 5, 2014. However, after that conference plaintiffs learned that the Salud discovery was incomplete.[8] Given the importance of the Salud case it is imperative that the bellwether class certification motion not be "teed up" until the record is complete. In view of recent developments and disclosures, the Court is not satisfied that this is the case.

Other circumstances exist to support plaintiffs' amendment. Plaintiffs are in possession of Caterpillar's opposition to their Salud motion for class certification which challenges the numerosity and adequacy requirements of their proposed class. Plaintiffs argue their proposed amendment seeks to remedy these alleged deficiencies and should be permitted. More importantly in this regard, however, is the fact that it is possible that plaintiffs' Salud class certification motion may be decided just on numerosity and adequacy grounds. If that occurs Salud will not address the predominance inquiry under Rule 23(b)(3) and will, therefore, provide little guidance whether class certification is appropriate in the other consolidated cases. In addition, plaintiffs can find new representative plaintiffs and

[8] The Court is not addressing, and is not deciding, whether plaintiffs' complaints are justified. The Court is merely stating the obvious. That is, that the resolution of the Salud certification motion is likely to be delayed while the Court addresses plaintiffs' discovery grievances.

refile for certification if their current certification motion is denied. It makes little sense to go forward with Salud as the bellwether case on the class certification issue if, as is apparent if plaintiffs' motion to amend is denied, the decision will provide little if any guidance as to the remainder of the MDL.

Another recent changed circumstance supporting plaintiffs is the fact that they allege it was not until Caterpillar filed its opposition to plaintiffs' motion for class certification that new evidence was revealed which supports their motion to amend. Plaintiffs allege that the Smock Declaration, attached as Exhibit A to Caterpillar's opposition to class certification filed on November 5, 2014, contains references to documents not produced in discovery which support the need for amendment. Specifically, plaintiffs contend that the Smock Declaration contains information regarding warranty data and engineering reviews previously unknown to plaintiffs. Plaintiffs argue if this new evidence was available at the time their fourth amended complaint was filed in Salud, Judge Seitz may have granted the amendment. Based on these material changes in circumstances and new evidence presented, the Court finds plaintiffs' amendment should be permitted.

An analogous situation was addressed in In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig., 282

F.R.D. 486, 491 (C.D. Cal. 2012). In Oreck, during the period in which the MDL panel was considering consolidating six cases, a court in the Middle District of Florida issued an order appointing interim class counsel in an individual case. Id. The Oreck decision found it appropriate to depart from the law of the case doctrine because "the circumstances have changed substantially since the Middle District of Florida issued its ruling: namely, the six cases have been consolidated and transferred to this Court for purposes of uniform litigation." Id. Thus, the court vacated the first order appointing interim class counsel. Id. Other courts also consider new evidence as an appropriate ground to review previously entered orders. See, e.g., Bishop v. Smith, 760 F.3d 1070, 1088 (10th Cir.), cert. denied, 135 S. Ct. 271 (2014) (finding previously unavailable affidavit "does qualify as new evidence within the meaning of the new-evidence exception to the law of the case doctrine"); Newman v. Ormond, 456 Fed. Appx. 866, 867 (11th Cir. 2012) (concluding "new evidence that [defendant] attached to his second summary judgment motion provided an exception to the law-of-the-case doctrine, such that the district court did not violate that doctrine in granting summary judgment based on the new record before it."); Aikens v. Ingram, 513 F. Supp. 2d 586, 593 (E.D.N.C. 2007) (where defendants submitted new evidence to support their argument that service was not properly effected

district court revisited motion to dismiss finding law of the case doctrine “discretionary and not mandatory”); Smith Machinery Co. v. Hesston Corp., 878 F.2d 1290 (10th Cir. 1989) (finding depositions and affidavits constituted new evidence which permitted district court to reconsider a previous ruling despite the law of the case). Similarly, the change in circumstances here warrants a departure from Judge Seitz’s Order. Since materially changed circumstances by way of consolidation and new evidence are present in the case, the Court concurs that "the 'law of the case' doctrine must yield to rational decision-making." Peterson v. Lindner, 765 F.2d 698, 704 (7th Cir. 1985) (citing Annot., 20 A.L.R. Fed. 13 (1974)).[9]

Relatedly, defendant argues plaintiffs cannot reassert claims previously “abandoned” or never asserted. In other words, defendant argues the Salud plaintiffs may only recover diminution in value damages instead of also seeking compensatory, incidental and consequential damages. Defendant points to the October 10, 2013 Order of the Honorable Andrea M. Simonton, U.S.M.J., which required the Salud plaintiffs to file a Notice of Limitation (“Notice”) of damages setting forth the damages sought. See Def.’s Ex. 3, Oct. 10, 2013 Order at 3. Plaintiffs’ Notice stated they would only seek damages “for engine replacement value, which includes engine repowering, and

[9] Avoiding duplicative discovery was one of the reasons cited by Caterpillar in support of its consolidation request. [C.A. No. 14-3734, Doc. No. 162-1 ¶ 6].

diminution in value claims." See Def.'s Ex. 4, Notice at 1. Now, however, plaintiffs seek damages "not limited to diminution in value." See Proposed ACCAC ¶¶ 198, 214, 343, 387, 841. Additionally, defendant opposes plaintiffs' previously "abandoned" claims of consumer protection or deceptive trade practices and breach of "engine warranty" as to the Florida, Illinois, Indiana, Tennessee and Texas plaintiffs. Def.'s Br. at 6-7. Defendant claims that because these claims were previously "abandoned" they should be deemed dismissed with prejudice.

The only case law defendants rely upon to support their argument is Allen v. N.Y.C. Hous. Auth., C.A. No. 10-168, 2012 WL 4794590, at *4 (S.D.N.Y. Sept. 11, 2012). The circumstances in Allen, however, are materially different than this case. First, the Allen court previously ordered the plaintiff to clarify if he was abandoning his federal claim. The plaintiff affirmed in writing he was, then later reversed this position. That certainly has not occurred here. Second, the defendant in Allen demonstrated substantial prejudice in the event the claim was revived.[10] As discussed, Caterpillar has not shown it will be prejudiced if plaintiffs' amendment is granted. Additionally, neither Allen, nor the other New York cases cited by Allen,

[10] For example, in Allen the defendant defended against the plaintiff's federal claims for two years. 2012 WL 4794590, at *4. The plaintiff then later confirmed in writing to the court his desire to drop his federal claims. Id. After the discovery period closed the plaintiff sought to reassert the claims. Id. The court found that the defendant would be unduly prejudiced by having to face the claims again and denied the amendment. Id. As already discussed, this type of prejudice is not present here.

involved MDL or class action litigation. Moreover, these non-precedential New York cases are not binding on this Court. As such, the Court declines to adopt Allen and will not preclude plaintiffs' amended claims simply because they were not included in previous versions of the Salud complaint. Since there are no equitable circumstances to bar plaintiffs' amendment, and defendant is not unduly prejudiced by the amendment, the Court will not bar the Salud plaintiffs from amending their complaint to include claims previously pleaded and dropped.

Further, especially in this class certification context, plaintiffs should not be denied the opportunity to, in their words, "clarify" their theory of the case. The interests of the putative class could be materially prejudiced if plaintiffs are barred from pursuing potentially viable causes of action because of decisions made under circumstances that have drastically changed. Litigation is fluid and it is not unusual for parties to adjust their theories and claims as discovery progresses, especially in this case where MDL discovery is at an early stage.

Last, under the present case management structure the proposed class is unnecessarily broken into pieces. Since Salud only addresses C13 bus engines, even if the present certification motion is decided C15 bus engines and C13 and C15 truck engines will need to be addressed. If plaintiffs' motion

is granted then the certification issue as to defendant's engines can be decided at one time instead of piecemeal. The fact of the matter is that the decision on the present Salud class certification motion will not "advance the ball" as far as it needs to go. On the other hand, if plaintiffs' amendment is granted all engines can be addressed together.

Conclusion

For all the foregoing reasons, plaintiffs' motion to amend will be granted. As discussed herein, the Court is not blind to the fact that its decision will result in some short term inefficiencies. However, the Court is convinced that plaintiffs' amendment now sets the course for the most efficient management of the case. Given the fluidity of litigation, sometimes it is necessary to take a step back to take two steps forward. An Order consistent with this Opinion will be entered.

s/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Dated: December 16, 2014