IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:  CATERPILLAR, INC., C13 and C15 ENGINE PRODUCTS LIABILITY LITIGATION | MDL No. 2540<br><br>Master Docket No.<br>1:14-cv-03722 (JBS-JS) |

## AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs, Ronald Bagley (Utah), Bailey Coach Inc., (Pennsylvania), Brian Brown (Missouri), BK Trucking Co. (New Jersey), Leroy Bolton Trucking Co. (Ohio), The Bones Company (Kansas), David Brewer (Maryland), Bryant's Transport, Inc. (Texas), C&F Movers, Inc. (Florida), Columbia Petroleum Transportation, LLC (New York), DeCamp Bus Lines  (New Jersey), Eagle Valley South, Inc. (Illinois), Easton Coach Company  (Pennsylvania), Eclipse Charters & Tours, LLC   (Indiana), First Priority Tours, Inc., d/b/a First Priority Trailways (Maryland), G&G Specialized Carriers, LLC (Wisconsin), Gentry Coach Company, d/b/a Gentry Trailways (Tennessee), Harmon Brothers Charter Services, Inc., (Georgia), John Lamanteer (New Jersey), K Double D, Inc. (Colorado), KLS Enterprises, LLC (Indiana), Kelton Tours Unlimited LLC (Alabama), Edward Charles McLean (North Carolina), MNS Enterprises, Inc. (Texas), Morris, Inc., (South Dakota), NW Navigator Luxury Coaches LLC (Oregon), Roadrunner Charters, Inc. (Texas), Salud Services, Inc. d/b/a Endeavor Bus Lines (Florida), S&M Mercado, Inc. (California), German Saravia (California), Scenic Boundaries Trans., Inc. (Minnesota), Tri-City Charter of Bossier, Inc. (Louisiana), U.S. Transport (New Mexico), Vandalia Bus Lines, Inc., (Illinois), White Knight Limo, Inc., (Missouri), Ricky A. Williams (Michigan), and Windy City Limo (Illinois), bring this class action on behalf of themselves and putative classes of similarly situated persons who are users, purchasers, subsequent purchasers,

owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of vehicles with a 2007, 2008, 2009 or 2010 C-13 or C-15 heavy duty on-highway diesel engine certified as compliant with the EPA's 2007 Heavy Duty On-Highway Emissions Standard ("2007 Emissions Standard") manufactured by Defendant, Caterpillar, Inc. ("CAT," "Caterpillar," or "Defendant").  These engines are collectively referred to herein as "MY[1] 2007 CAT Engines."  In support hereof, Plaintiffs state as follows:

1.      CAT designed, manufactured, sold for profit, and warranted MY2007 CAT Engines with an exhaust emission control system, known as the Caterpillar Regeneration System ("CRS"), containing integrated parts and components intended to reduce air pollutants, in particular, oxides of nitrogen and particulate matter, to levels not to exceed those set by the 2007 Emissions Standard.

2.      CAT's CRS is defective, which results in the vehicles with MY2007 CAT Engines failing to operate under all conditions and all application on a consistent and reliable basis, even after repeated emissions warranty repairs and replacements. These repeated warranty repairs and replacements failed to repair or correct the CRS defect, resulting in damages to Plaintiffs and the putative class members. Damages include diminished value of the vehicles powered by MY2007 CAT Engines, out-of-pocket costs such as repair invoices and related hotel/taxi charges, and the costs to re-power the vehicles with suitable replacement diesel engines.

3.      It is important to note what this suit is not about. This suit is not about the level of emissions from MY2007 CAT engines, nor is it about the certification of those engines. Plaintiffs do not claim that CAT violated any provision of the Clean Air Act, nor any regulation

---

[1] "MY" stands for Model Year.

promulgated by the Environmental Protection Agency ("EPA"). Plaintiffs do not seek to enforce any provision of the Clean Air Act or regulations promulgated thereunder. Rather, Plaintiffs allege that MY2007 suffer from a common design defect that renders the MY2007 CAT Engines unreliable, resulting in the Engine failing, derating, or requiring repowering. This is a defect CAT knew, or should have known, about before releasing the MY2007 Engine into the stream of commerce. The CRS defect is one that CAT cannot fix, and that eventually led CAT to stop selling the Engines. This defect caused all of the Plaintiffs and putative class members to suffer substantial damages.

## JURISDICTION, VENUE, AND PARTIES

4.      This class action is within the original jurisdiction of this Court pursuant to 28 U.S.C. §1332(a) and 28 U.S.C. §1332(d)(2) (the Class Action Fairness Act). The amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs, and at least one member of the putative classes is a citizen of a state different than the Defendant.

5.      Venue in this District satisfies the requirements of 28 U.S.C. §1391(b)(1-2) because a substantial amount of the events and occurrences giving rise to the claims occurred in this District, or a substantial part of the property that is the subject of this action is situated in this District.

6.      Plaintiff Ronald Bagley is a citizen of Utah, residing in Salt Lake City, Utah, and is President of Bagley Transport. Plaintiff Bagley purchased one vehicle containing a MY2007 CAT Engine on or about July 29, 2011. Plaintiff's vehicle has experienced incidence of emissions control failures resulting from the MY 2007 common defect, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took his vehicle in

for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

7. Plaintiff Bailey Coach is a Pennsylvania corporation with its principal place of business located at 123 E. Market St. York, Pennsylvania. Thus, Bailey Coach is a citizen of Pennsylvania. Plaintiff Bailey Coach purchased a vehicle containing a MY2007 CAT Engine on or about July 27, 2007. Plaintiff's vehicle experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicle in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

8. Plaintiff Brian Brown is a citizen of Missouri, residing in St. Louis, Missouri. Plaintiff Brown purchased and owns one vehicle containing a MY2007 CAT Engine on or about February 27, 2008. Plaintiff's vehicle experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicle in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages

9.      Plaintiff BK Trucking Co. is a New Jersey corporation with its principal place of business located at 1000 Route 40, Newfield, New Jersey. Thus, Plaintiff is a citizen of New Jersey. Plaintiff BK Trucking purchased twelve vehicles containing MY2007 CAT Engines between November 17, 2008 and October 6, 2010. Plaintiff's vehicles experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicles in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

10.     Plaintiff Leroy Bolton Trucking Co. is an Ohio corporation with its principal place of business located at 175 Miacomet Drive, Reynoldsburg, Ohio. Thus, Plaintiff is a citizen of Ohio. Plaintiff Leroy Bolton Trucking purchased one vehicle containing a MY2007 CAT Engine. Plaintiff's vehicle experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicle in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

11.     Plaintiff The Bones Company is a Kansas corporation with its principal place of business located at 3557 Hwy 59, PO Box 41, Ottawa, Kansas. Thus, Plaintiff is a citizen of Kansas. Plaintiff The Bones Company purchased two vehicles containing a MY2007 CAT

Engine on or about March 17, 2010. Plaintiff's vehicles experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicles in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

12.     Plaintiff David Brewer is a citizen of Maryland residing in Parkton, Maryland. Plaintiff Brewer purchased one vehicle containing a MY2007 CAT Engine on or about July 27, 2007. Plaintiff's vehicle has experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicle in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

13.     Plaintiff Bryant's Transport, Inc. is a Texas corporation with its principal place of business located at 4014 Harvey Road, Crosby, Texas. Thus, Plaintiff is a citizen of Texas. Plaintiff Bryant's Transport purchased one vehicle containing a MY2007 CAT Engine on or about December 2, 2008. Plaintiff's vehicle experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicle in for warranty service by CAT

authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

14.     Plaintiff C&F Movers, Inc. is a Florida corporation with its principal place of business located at 3195 Commerce Parkway, North Port, Florida. Thus, Plaintiff is a citizen of Florida. Plaintiff C&F Movers leased with an option to buy one vehicle containing a MY2007 CAT Engine on or about March 22, 2011. Plaintiff's vehicle experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, failed ARD heads, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicle in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

15.     Plaintiff Columbia Petroleum Transportation, LLC is a New York limited liability company with its principal place of business located at 520 Broadhollow Road, Suite 200W, Melville, New York. Thus, Plaintiff is a citizen of New York. Plaintiff Columbia Petroleum purchased five vehicles containing MY2007 CAT Engines on or about December 28, 2006, November 8, 2007, December 5, 2007, November 13, 2008, and May 16, 2009. Plaintiff's vehicles experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicles in for warranty service by CAT authorized

technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

16.     Plaintiff DeCamp Bus Lines is a New Jersey corporation, with its principal place of business located at 101 Greenwood Ave., Montclair, New Jersey 07042. Thus, Plaintiff is a citizen of New Jersey. Plaintiff DeCamp purchased sixteen vehicles containing a MY2007 CAT Engine on or about July 27, 2007. Plaintiff's vehicles experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicle in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

17.     Plaintiff Eagle Valley South, Inc. is a Florida corporation with its principal place of business located at 2928 Shadow View Circle, Maitland, Florida. Plaintiff Eagle Valley South, Inc., thus, is a citizen of Florida. Plaintiff Eagle Valley purchased one vehicle containing a MY2007 CAT Engine in Melrose Park, Illinois. Plaintiff's vehicle experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicle in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work however the defects were not

corrected in spite of CAT's representations that they were. As a result, Plaintiff has suffered substantial damages.

18.     Plaintiff Easton Coach is a Pennsylvania corporation with its principal place of business located at 1200 Conroy Pl., Easton, Pennsylvania. Thus, Easton is a citizen of Pennsylvania. Plaintiff Easton Coach purchased one vehicle containing a MY2007 CAT Engine on or about July 27, 2007. Plaintiff's vehicle experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicles in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, however, the defects were not corrected in spite of CAT's representations that they were. As a result, Plaintiff has suffered substantial damages.

19.     Plaintiff First Priority is a Maryland corporation with its principal place of business located at 4203 Forestville Road, District Heights, Maryland. Thus, Plaintiff is a Maryland citizen. Plaintiff First Priority purchased six vehicles containing a MY2007 CAT Engine. Plaintiff's vehicles experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicles in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

20.     Plaintiff G&G Specialized Carriers, LLC is a Wisconsin limited liability company with its principal address located at S82 W19480 Apollo Dr., Muskego, Wisconsin. Thus, Plaintiff is a citizen of Wisconsin. Plaintiff G&G purchased three vehicles containing MY2007 CAT Engines on or about April 7, 2008. Plaintiff's vehicles experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicles in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

21.     Plaintiff Gentry is a Tennessee corporation with its principal place of business located at 2519 Mitchell Street, Knoxville, Tennessee 37919. Thus, Plaintiff is a citizen of Tennessee. Plaintiff purchased at least three vehicles containing MY2007 CAT Engines on or about April 3, 2007, April 3, 2008, and March 28, 2008. Plaintiff's vehicles experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, failed ARD heads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicles in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

22.     Plaintiff Harmon Brothers is a Georgia corporation with its principal place of business located at 5094 Westbrook Road, Union City, Georgia. Thus, Plaintiff is a citizen of

Georgia. Plaintiff Harmon Brothers purchased two vehicles containing a MY2007 CAT Engine on or about March 14, 2008. Plaintiff's vehicles experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicles in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

23.     Plaintiff Kelton Tours is an Alabama limited liability company, with its principal place of business located at 1625 Forrest Ave., Gadsden, Alabama. Thus, Plaintiff is Kelton tours is a citizen of Alabama. Plaintiff Kelton Tours purchased a vehicle containing a MY2007 CAT Engine on or about June 18, 2009. Plaintiff's vehicle experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicle in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

24.     Plaintiff John Lamanteer is a citizen of New Jersey, residing 1668 Firetower Road Chester, South Carolina. While residing in New Jersey, Plaintiff Lamanteer leased via a TRAC option[2] one vehicle containing a MY2007 CAT Engine on or about May 23, 2008. Plaintiff's

---

[2] Vehicle leases with a Terminal Rental Adjustment Clauses are traditional methods of financing the purchase of commercial equipment. The Terminal Rental Adjustment Clause shifts the risk of diminished value onto the lessee at the lease termination. As explained herein, because the

vehicle has experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicle in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

25.     Plaintiff K Double D, Inc. is a Colorado corporation with its principal place of business located at 41273 Dublin Drive, Parker, Colorado. Thus, Plaintiff is a citizen of Colorado. Plaintiff K Double D purchased one vehicle containing a MY2007 CAT Engine on or about February, 2009. Plaintiff's vehicle has experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, ARD head failures, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicle in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

26.     Plaintiff Eclipse is an Indiana limited liability company, with its principal place of business located at 3333 Grant Street, Gary, Indiana 46408. Thus, Plaintiff Eclipse, is a citizen of Indiana. Plaintiff purchased eight vehicles containing MY2007 CAT Engines in or around the years 2007, 2008 and 2010. Plaintiff's vehicles experienced incidence of emissions control

---

defective MY2007 engines diminish the values of the vehicles, all Plaintiffs and Class member who financed the purchase of their vehicles powered by MY2007 CAT Engines with leases containing a Terminal Rental Adjustment Clause have been damaged.

failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, ARD head failures, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicles in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

27.     Plaintiff KLS Enterprises, LLC is an Indiana limited liability company with its principal place of business located at 1784 E 700 S, Ferdinand, Indiana. Thus, Plaintiff is a citizen of Indiana. Plaintiff KLS Enterprises, LLC purchased one vehicle containing a MY2007 CAT Engine on or about July 28, 2008. Plaintiff's vehicle experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, ARD head failures, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicle in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

28.     Plaintiff Edward Charles McLean is a citizen of North Carolina, residing in Laurel Hill, North Carolina. Plaintiff McLean leased via a TRAC option a vehicle containing a MY2007 CAT Engine on or about January 7, 2008. Plaintiff's vehicle experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, ARD head failures, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicle in for warranty service by CAT authorized technicians

during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

29.    Plaintiff MNS Trucking Enterprises, Inc. is a Texas corporation with its principal place of business located at 5715 Schurmier Road, Houston, Texas. Thus, Plaintiff MNS is a citizen of Texas. Plaintiff MNS Trucking purchased one vehicle containing a MY2007 CAT Engine on or about January 2009. Plaintiff's vehicle has experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, ARD head failures, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicle in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

30.    Plaintiff Morris, Inc. is a citizen of South Dakota residing in Pierre, South Dakota. Plaintiff Morris purchased two vehicles containing MY2007 CAT Engines on or about May 12, 2009. Plaintiff's vehicles experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, ARD head failures, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took his vehicles in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was.  As a result, Plaintiff has suffered substantial damages.

31.     Plaintiff NW Navigator Luxury Coaches, LLC is an Oregon corporation with its principal place of business located at 10360 N. Vancouver Way, Portland, Oregon 97217. Thus, NW Navigator is a citizen of Oregon. Plaintiff NW Navigator purchased a vehicle containing MY2007 CAT Engines in or around 2009. Plaintiff's vehicle experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, ARD head failures, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicle in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

32.     Plaintiff Roadrunner is a Texas corporation, with its principal place of business located at 1634 E. Irving Blvd, Irving, Texas 75060. Thus, Plaintiff is a citizen of Texas. Plaintiff purchased fourteen vehicles containing MY2007 CAT Engines in or around 2010 and 2012. Plaintiff's vehicles experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, ARD head failures, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicles in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

33.     Plaintiff Salud Services, Inc. is a Florida corporation with its principal place of business located at 7915 NW 5th Court, Miami, Florida 33150. Thus, Plaintiff is a citizen of Florida. Plaintiff Salud purchased six vehicles containing MY2007 CAT Engines. Plaintiff's

vehicles experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, ARD head failures, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicles in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

34.     Plaintiff S&M Mercado, Inc. is a California corporation with its principal place of business located at 498 Dogwood Court, Tulare, California. Thus, Plaintiff is a citizen of California. Plaintiff S&M Mercado purchased one vehicle containing a MY2007 CAT Engine on or about March 12, 2010. Plaintiff's vehicles experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, ARD head failures, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicle in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

35.     Plaintiff German Saravia is a citizen of California residing in Brawley, California. Plaintiff Saravia purchased one vehicle containing a MY2007 CAT Engine on or about September 7, 2010. Plaintiff's vehicle experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, ARD head failures, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took his vehicle in for

warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

36.     Plaintiff Scenic Boundaries Trans., Inc. is a Wisconsin corporation, but with its principal place of business located at 605 Old Military Road, Sandstone, Minnesota. Thus, Plaintiff is a citizen of Wisconsin and Minnesota. Plaintiff purchased at least six vehicles containing MY2007 CAT Engines on or about May 6, 2008, August 12, 2008, September 26, 2008, September 29, 2008, and June 30, 2009 in Minnesota. Plaintiff's vehicles experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, ARD head failures, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicles in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

37.     Plaintiff Tri-City Charter of Bossier, Inc. is a Louisiana corporation with its principal place of business located at 1323 Canyon Court, Bossier City, Louisiana 71111. Thus, Tri-City Charter is a citizen of Louisiana. Plaintiff Tri-City Charter purchased at least ten vehicles containing a MY2007 CAT Engine. Plaintiff's vehicles have experienced incidence of CRS failure and suffered engine and regeneration problems, including but not limited to repeated check engine lights and failed regenerations. Plaintiff took its vehicles in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed

the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

38. Plaintiff U.S. Transport is a Colorado corporation with its principal place of business located at 241 W. 56th Avenue, Denver, Colorado. Thus, Plaintiff is a citizen of Colorado. Plaintiff U.S. Transport purchased at least ten vehicles containing a MY2007 CAT Engine on or about October 20, 2008. Plaintiff's vehicles experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, ARD head failures, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicles in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

39. Plaintiff Vandalia is an Illinois Corporation with its principal place of business located at 312 West Morris Street, Caseyville, Illinois 62232. Thus, Plaintiff is a citizen of Illinois. Plaintiff purchased at least eight vehicles containing MY2007 CAT Engines. Plaintiff's vehicles experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, ARD head failures, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicles in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

40.     Plaintiff White Knight Limo, Inc., is a Missouri corporation with its principal address located at 1500 Jade Rd, Columbia, Missouri. Thus, Plaintiff is a citizen of Missouri. Plaintiff White Knight purchased three vehicles containing MY2007 CAT Engines in or around September and October of 2011. Plaintiff's vehicles experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, ARD head failures, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicles in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

41.     Plaintiff Ricky A. Williams is a citizen of Michigan, residing in Detroit, Michigan. Plaintiff Williams purchased one vehicle containing a MY2007 CAT Engine on or about April 12, 2007. Plaintiff's vehicle experienced incidence of emissions control failures resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, ARD head failures, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took his vehicle in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

42.     Plaintiff Windy City Limousine LLC is an Illinois corporation with its principal address located at 9377 W. Grand Ave., Franklin Park, 60131, Illinois. Thus, Plaintiff is a citizen of Illinois. Plaintiffs Windy City leased eleven vehicles containing MY2007 CAT Engines in or around 2009 and 2010. Plaintiffs vehicles experienced incidence of emissions control failures

resulting from the MY 2007 common defects, in particular CRS failures of regeneration, causing repeated check engine lights, high soot loads, ARD head failures, engine derating and shutdown, and failed Diesel Particulate Filter ("DPF") regenerations. Plaintiff took its vehicles in for warranty service by CAT authorized technicians during the warranty period. CAT's authorized technician performed the warranty work, but failed to correct the defect despite CAT's representations that it was. As a result, Plaintiff has suffered substantial damages.

43.      Caterpillar is a Delaware corporation with its principal place of business located at 100 NE Adams Street, Peoria, Illinois. CAT, thus, is a citizen of Delaware and Illinois. CAT designed, manufactured, distributed, delivered, supplied, inspected, marketed, leased and sold for profit, the MY2007 CAT Engine.

## GENERAL ALLEGATIONS

### A.  MY2007 CAT Engine Emission System

44.      At the time CAT sold the MY2007 CAT Engines, the federal emissions standards set limits on the maximum amount of Oxides of Nitrogen ("NOx"), Non-Methane Hydrocarbons, Non-Methane Hydrocarbon Equivalent, Carbon Monoxide, and Particulate Matter ("PM") that could be emitted by heavy duty on-highway diesel vehicles and engines. *See* 40 CFR §86.007-11. These standards, referred to herein as "2007 Emissions Standards," were adopted in 2001, but did not become effective until 2007.

45.      After the EPA adopted the 2007 Emissions Standards, CAT made the business decision to investigate, design, manufacture, and lease and sell for profit heavy-duty diesel engines its own proprietary technology to try to comply with the requirements of the Standards.

46.      On information and belief, in October 2003, CAT's Aftertreatment Technologies Group launched a project to design an engine-independent (meaning independent of engine NOx

and PM output), self-regenerating, Diesel Particulate Filter. The directive for the project was to provide a PM Aftertreatment solution, i.e., reduction in exhaust pollutants after the exhaust leaves the engine, for 2007 diesel engines within performance and cost constraints. In particular, the emissions controls would permit the Engines to operate under all conditions and all applications, without unscheduled, maintenance for 1,000,000 miles.

47.     CAT's various development, design, engineering, manufacturing, and business teams participated in approval of the CRS exhaust emission control ultimately used in CAT's MY2007 Engines. CAT designed its CRS, branded "ACERT" (Advanced Combustion Emissions Reduction Technology), to reduce emissions by trapping PM (i.e., soot) from the combustion process in the Diesel Particulate Filter. Once trapped, the PM is supposed to be burned off by exhaust temperatures and oxidized in a process known as "regeneration" that requires consistently high temperatures (often in excess of 1000°F).

48.     The CRS is materially identical in all MY2007 CAT Engines. A schematic of the system is at page 2 of Exhibit A.

49.     CAT's CRS was designed to perform DPF regeneration both passively and actively without the use of a Diesel Oxidation Catalyst. For passive regeneration, the engine provides exhaust gas temperature to burn off the PM. When the exhaust temperature is not sufficient, however, active regeneration is required, meaning the exhaust temperatures must be increased to burn off PM collected by the Diesel Particulate Filter.

50.     The CAT CRS was designed without a Diesel Oxidation Catalyst (DOC) as a means of regeneration under all conditions and all applications. The DOC is a well-known technology to achieve regeneration. In fact, CAT employed a DOC in its heavy duty on-highway

diesel engines produced before 2007, and uses a DOC (and Selective Catalytic Reduction, "SCR") in its current off-highway heavy duty diesel engines.

51.     To achieve the exhaust temperatures necessary for active regeneration in the DPF without a DOC, CAT's CRS utilizes an Aftertreatment Regeneration Device ("ARD") to provide additional heat (600-650 ˚C) to the MY2007 CAT Engine's exhaust. Compressed air and ultra-low sulfur diesel fuel enter the head of the ARD where they are mixed and ignited by the spark plug. Once ignited, the mixture combines with engine exhaust flow directed into the inlet of the Filter to enable regeneration (burning) of the PM trapped by the Filter.

52.     Due to the interrelationship of the PM/soot load and the exhaust temperature, proper "thermal management" is essential to the function of the CRS. In order for the CRS system to work properly, it must monitor and control the exhaust temperature consistently and precisely. If the temperature is too high, the DPF cracks and cannot successfully regenerate. A temperature that is too low prevents the PM from burning off, clogging the DPF with excessive soot loads impeding exhaust flow. As explained herein, the CAT CRS cannot, and does not reliably maintain the required thermal management under all conditions and applications as represented.

53.     To conduct this thermal management, the CRS operates with the use of an Electronic Control Module ("ECM"), which is a comprehensive, programmable system that monitors all systems of the MY2007 CAT Engine. The ECM continuously monitors engine operating conditions, controls DPF regeneration, interfaces with the vehicle's sensor inputs, and performs fault detection and on-board diagnostic reporting. The ECM regulates and monitors the operation of the DPF and ARD to ensure that the DPF soot levels remain within operational specifications, and it is programmed to recognize and record a failure of regeneration, inform the

operator, and take protective action if regeneration does not, or cannot, be achieved. These protective measures are initiated to protect against the adverse consequences of regeneration failure, including the prevention of exhaust emissions exceeding the EPA emissions standards.

54.     When a MY2007 CAT Engine CRS fails or is unable to regenerate, the ECM diagnoses the failure and either commands the Check Engine Light to advise the operator of a system failure, derates the engine, or engages an engine shutdown protocol. If this failure is not corrected, the ECM proceeds through these protective measures. Engine "derating," means lowering of the engine horsepower and speed (in theory, to allow the vehicle to get to an authorized dealer/repair facility). Engine shut down means that the Engine is rendered inoperable. When there is a regeneration failure, the vehicle requires servicing at an authorized CAT repair facility, where an attempt is made to remedy the problem.

55.     The ECM not only diagnoses problems according to pre-set "diagnostic codes," but records ("stores" or "logs") the responses, *i.e.*, Check Engine Light, derate, and shut down, for later review and analysis. When a vehicle is brought in for emissions warranty repair for a CRS failure, the failure can be identified by accessing the ECM stored data. Furthermore, each separate failure detected related to a vehicle's CRS is designated by a specific code within the group of codes relating to CRS. CRS-related failures for each vehicle can be precisely identified by accessing the ECM stored data for that vehicle. For instance, when the ECM stored data for a vehicle shows code 1110-31 ("Engine Protection System has Shutdown Engine") with code 3719 ("Diesel Particulate Filter Collects Excessive Soot"), that means the vehicle's engine was shut down because the DPF failed to properly regenerate after repeated attempts.

56.     Defendant knew, or should have known, that its CRS could not regenerate the DPF on a consistent and reliable basis, under all conditions and applications. Nevertheless, CAT rejected known, reliable exhaust emission controls in the MY2007 CAT Engines.

57.     The CRS defects alleged herein only affect the use, operation, and movement of Plaintiffs' vehicles and do not implicate any violation, or enforcement of the Clean Air Act, or the EPA emissions standards.

**B.  Defective Nature of the MY2007 CAT Engine Emission System**

58.     CAT manufactured and uniformly marketed the MY2007 CAT Engine to provide regeneration "under all conditions and all applications," without "unscheduled maintenance" for the expected life ("durability") of the engine "to overhaul," which CAT represented as 1,000,000 miles.

59.     Notwithstanding CAT's representations, the MY2007 CAT Engine CRS is unable to maintain reliable thermal management of exhaust temperatures sufficient to achieve regeneration under all operating conditions and all applications, and as a result, the CRS's protective measure rendering the vehicles inoperable requiring remediation by authorized CAT technicians using proprietary CAT equipment and methods.

60.     Because the CRS cannot reliably regenerate the DPF, the ECM routinely notifies the vehicle operator of the problem, causing the MY2007 CAT Engine to illuminate a Check Engine Light (CLE), to derate and, ultimately, shut down. This has occurred in the vehicles equipped with MY2007 CAT Engines on a frequent, repeated, and endemic basis, despite numerous attempts to remediate the causes of these regeneration failures through authorized "repair and replacement."

61.     Each of Plaintiffs' vehicles that was equipped with MY2007 CAT Engines suffered numerous CRS failures, resulting in repeated breakdowns and lengthy (and futile) repair attempts, resulting in a significant reduction in the value of the vehicles, and associated out-of-pockets costs, such as towing bills, repair invoices, and related hotel/taxi charges.

62.     Knowledge of the CRS emissions system defect has now permeated the market, leaving Plaintiffs (and all other class members) unable to sell their vehicles without incurring substantial losses. On information and belief, even CAT's own finance company, Caterpillar Financial, has recognized the diminished value of these vehicles, as demonstrated by its practice of factoring in an impairment value when financing a deal involving a vehicle with a MY2007 CAT Engine.

63.     CAT cannot correct the defect in the MY2007 CAT Engines and has been unable to correct the defect from the time the MY2007 CAT Engines were brought to market. Thus, the MY2007 CAT Engine in each of the Plaintiffs' (and all other class members') vehicles must be replaced.

64.     On information and belief, CAT discontinued manufacture of the MY2007 CAT Engines in 2009-2010 because the defect in the CRS could not be corrected.

**C. CAT's Knowledge of the Defective Nature of the MY2007 CAT Engine Emission System**

65.     Since first putting the MY2007 CAT Engines on the market, the warranty claims for the defects in the parts and components of CAT's emission controls have been substantial, making CAT fully aware of the significant costs that owners and lessees of the vehicles equipped with MY2007 CAT Engines incur as a result of the defective emission related parts and components.

66.     This was not a surprise to CAT, as it has known since at least 2006, prior to the sales of the MY2007 CAT Engines, that the CRS parts and components were not sufficiently robust to achieve the represented levels of reliability and durability. Despite this knowledge, CAT put the defective MY2007 CAT Engine on the market beginning January 2007, causing substantial damages to Plaintiffs and members of the class.

67.     CAT knew, or should have known that the CRS in the MY 2007 Engines required precise thermal management to effect regeneration of the DPF and that the CRS was not sufficiently robust to achieve reliable thermal management requirements.

68.     After the 2007 launch of the MY2007 CAT Engine, CAT tracked emission related warranty claims. CAT recognized that there were so many service problems for emission related parts and components that it had insufficient inventory to replace the warranted emission-related parts and components and could not produce non-defective emissions related parts and components to repair or replace. CAT realized that attempts to correct the defects failed.

69.     In 2008, internally CAT acknowledged that the entire MY 2007 Engine population was plagued with repeated reliability issues caused by the CRS system. These problems began to manifest immediately after the MY 2007 Engines were released.

70.     On information and belief, CAT utilized a "Field Follow" program to track CRS field performance. This performance "metric" showed excessive failures rates immediately (first 100 hours of operation) upon release of the MY 2007 Engines, and for the first year as high as 65% for the CRS system.

71.     CAT also tracked warranty data on defective emission related parts and components through a number of performance indices, including its Continued Product Improvement program ("CPI"). Through this program, CAT examined returned and/or failed

parts from the CRS; analyzed potential root causes for the problems with the CRS, which CAT admitted did not include operator error or misuse; unsuccessfully attempted to correct the defect with the CRS; and predicted significant failure rates of these parts and components in the course of their represented expect operating life, some as high as 99%.

**D. CAT's Failure To Honor Warranties Covering The Defective MY2007 CAT Engine Emission System**

72.     CAT warrants the user of every MY 2007 Engine through two documents: the Engine warranty and the Emission related component warranty.

a.   The Engine warranty, attached hereto as Exhibit B, warrants the user of every "new 10.3 liter up to and including 18.1 liter engines sold by it for use in powering on-highway vehicles to be free from defects in material and workmanship."  The warranty extended for 24 months from the date of delivery to the first user. The Engine warranty further provides that "THIS WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES…EXCEPT CATERPILLAR EMISSION RELATED COMPONENTS WARRANTIES FOR NEW ENGINES WHERE APPLICABLE".[3]

b.   Paragraph 2 of CAT's "Federal Emissions Control Warranty", attached hereto as Exhibit C, warrants that each C13 and C15 on-highway diesel engine "to be free from defects in material and workmanship."[4]  This warranty expressly

---

[3] CAT's Engine warranty is non-negotiable and states it covers only defects in "workmanship and material." CAT also sells warranty extension contracts, which contain the same coverage limitation.

[4] As explained below, Plaintiffs allege that CAT's unilateral restriction in its warranties to cover solely "workmanship and material" defects is unconscionable in light of CAT's superior knowledge of the CRS design defect and the parties' unequal bargaining power.

covers "emission related parts and components" defined as "Turbocharge
System, Inlet Manifold, Fuel Injection System, Crankcase Ventilation System,
Electronic Engine Control System, Exhaust Aftertreatment System, Clean Gas
Induction System, Aftertreatment Regeneration Device, and Miscellaneous
valves, switches, hosed, clamps, connectors, tubing and sealing devices used
in the above systems." Under "Caterpillar Inc.'s Responsibilities," Caterpillar
is obligated to repair or replace of the defective parts and/or components
"required to correct the defect."

73.    Although CAT was obligated to correct the defect with the MY2007 CAT Engine
CRS, it failed to do so (and, indeed, is unable to do so), yet represented to Plaintiff and the class
that it "warranty repairs" did correct the defect. As a result Plaintiffs and putative class members
have repeatedly brought their vehicles in for warranty repairs related to the CRS only to have the
same replacements and repairs continue to fail.

74.    CAT breached its warranties by failing to correct the defects in the warranted
emission related parts and components, preventing the operation of the MY2007 CAT Engines
under all operating conditions and applications, for the reasonably expected life of the vehicles.

**E.  Experiences Of Plaintiffs And The Class Members With Repeated Failures Of The
Defective MY2007 CAT Engine Emission System**

75.    Soon after purchase or lease, Plaintiffs' MY2007 CAT Engines detected
numerous and various faults in the emission related parts and components causing operation of
the CRS to fail, which triggered warning, derating, and shut down necessitating delivery of the
vehicle to an authorized CAT repair facility for emissions warranty work. These repeated
regeneration failures rendered the vehicles inoperable for the transportation of goods or persons.
Plaintiffs repeatedly took their vehicles to authorized Caterpillar repair facilities for warranty

repair and replacement, but the repair and replacement did not correct the defect. The unavailability of the vehicles for transportation caused Plaintiffs to incur additional damages.

76.     In spite of repeated warranty work on the CRS, Plaintiffs and the class members experienced repeated instances of warning lights illuminating, engine derating, shutdown, and other failures all stemming from the CRS's failure to properly regenerate the DPF.

77.     CAT represented to Plaintiffs and the class members that each emission warranty repair/replacement would correct the defect, although it knew or should have known that the CRS would fail again, leading to further engine derating and shutdowns.

78.     CAT continued to provide Plaintiffs and the class with ineffectual measures. As a result, the durational, and the limits as to how CAT may remedy defects that are contained in the express warranties fail their essential purpose, i.e., to provide non defective, emission related parts and components which would operate under all operating conditions and all applications for the expected operating life of the Engine without unscheduled maintenance for 1,000,000 miles.

## CLASS ACTION ALLEGATIONS

79.     Plaintiffs bring this action on behalf of themselves and all others similarly situated, as members of the classes proposed below, under Federal Rule of Civil Procedure 23. The requirements of subsections (a), (b)(2), and (3) to Rule 23 are met with respect to the classes defined below.

80.     Plaintiffs seek to represent, and bring this action on behalf of, the following Classes:

      a.  <u>Alabama Class</u>—All persons and entities, in the State of Alabama, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and

lessors (having purchased via a TRAC option or some rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiff Kelton Tours is a member and putative class representative of the Alabama Class

b. <u>California Class</u>—All persons and entities, in the State of California, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having purchased via a TRAC option or some rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiffs S&M Mercado, Inc. and German Saravia are members and putative class representatives of the California Class.

c. <u>Colorado Class</u>— All persons and entities, in the State of Colorado, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiff K Double D is a member and putative class representative of the Colorado Class.

d. <u>Florida Class</u>— All persons and entities, in the State of Florida, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiffs C&F Movers, Inc. and Salud are members and putative class representatives of the Florida Class.

e. <u>Georgia Class</u>—All persons and entities, in the State of Georgia, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having purchased via a TRAC option or some rights to residual

purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiff Harmon Brothers is a member and putative class representative of the California Class.

f.  <u>Illinois Class</u>—All persons and entities, in the State of Illinois, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiffs Eagle Valley South, Inc., Vandalia, and Windy City Limo are members and putative class representatives of the Illinois Class.

g.  <u>Indiana Class</u>—All persons and entities, in the State of Indiana, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiffs KLS Enterprises, LLC and Eclipse are members and putative class representatives of the Indiana Class.

h.  <u>Kansas Class</u>—All persons and entities, in the State of Kansas, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiff The Bones Company is a member and putative class representative of the Kansas Class.

i.  <u>Louisiana Class</u>—All persons and entities, in the State of Louisiana, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiff Tri-City Charter of

Bossier, Inc. is a member and putative class representative of the Louisiana Class.

j. <u>Maryland Class</u>—All persons and entities, in the State of Maryland, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiffs David Brewer and First Priority are members and putative class representatives of the Maryland Class.

k. <u>Michigan Class</u>—All persons and entities, in the State of Michigan, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiff Ricky A. Williams is a member and putative class representative of the Michigan Class.

l. <u>Minnesota Class</u>—All persons and entities, in the State of Minnesota, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiff Scenic Boundaries Trans., Inc. is a member and putative class representative of the Minnesota Class.

m. <u>Missouri Class</u>— All persons and entities, in the State of Missouri, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiffs White Knight

Limousine, Inc. and Brian Brown are members and putative class representatives of the Missouri Class.

n. <u>New Jersey Class</u>— All persons and entities, in the State of New Jersey, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiffs BK Trucking Co., DeCamp, and John Lamanteer are members and putative class representatives of the New Jersey Class.

o. <u>New Mexico Class</u>— All persons and entities, in the State of New Mexico, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiff U.S. Transport is a member and putative class representative of the New Mexico Class.

p. <u>New York Class</u>— All persons and entities, in the State of New York, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiff Columbia Petroleum Transportation, LLC is a member and putative class representative of the New York Class.

q. <u>North Carolina Class</u>— All persons and entities, in the State of North Carolina, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine.

Plaintiff Edward Charles McLean, Inc. is a member and putative class representative of the North Carolina Class.

r.  <u>Ohio Class</u>— All persons and entities, in the State of Ohio, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiff Leroy Bolton Trucking Co. is a member and putative class representative of the Ohio Class.

s.  <u>Oregon Class</u>— All persons and entities, in the State of Oregon, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having purchased via a TRAC option or some rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiff NW Navigator is a member and putative class representative of the Oregon Class.

t.  <u>Pennsylvania Class</u>—All persons and entities, in the State of Pennsylvania, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having purchased via a TRAC option or some rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiffs Easton Coach and Bailey Coach are members and putative class representatives of the Pennsylvania Class.

u.  <u>South Dakota Class</u>— All persons and entities, in the State of South Dakota, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of

a vehicle powered by a MY2007 CAT Engine. Plaintiff Morris, Inc., is a member and putative class representative of the South Dakota Class.

v.   Tennessee Class--All persons and entities, in the State of Tennessee, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiff Gentry is a member and putative class representative of the Tennessee Class.

w.   Texas Class— All persons and entities, in the State of Texas, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiffs Bryant's Transport, Inc., Roadrunner, and MNS Trucking Enterprises, Inc., are members and putative class representatives of the Texas Class.

x.   Utah Class— All persons and entities, in the State of Utah, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiff Ronald Bagley is a member and putative class representative of the Utah Class.

y.   Wisconsin Class— All persons and entities, in the State of Wisconsin, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having rights to residual purchase of the vehicles at lease end) of a vehicle powered by a MY2007 CAT Engine. Plaintiff G&G Specialized

Carriers, LLC, is a member and putative class representative of the Wisconsin

Class.

81.    The above proposed classes exclude: (1) CAT, any entity in which CAT has a

controlling interest, and its legal representatives, officers, directors, employees, assigns, and

successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or

immediate family; (3) Class Counsel; and (4) claims for personal injury and emotional distress.

82.    On information and belief, CAT sold thousands of MY2007 CAT Engines. Each

of these Engines contained a defectively designed CRS. While the precise number and identities

of the members of the Classes are unknown to Plaintiffs, this information can be ascertained

through reasonable discovery diligence and appropriate notice.  Given CAT's sales volume, there

will be at least 40 putative class members as to each individual claim asserted by Plaintiffs.

83.    There are numerous common questions of law and fact that predominate over any

questions affecting only individual members of the Classes. Among these common questions of

law and fact are the following::

    a.   Whether the CAT's CRS was defectively designed;

    b.   Whether CAT sold the MY2007 CAT Engine with a defective emission
       control system that fails to regenerate the DPF under all conditions and all
       applications resulting in warnings, derating, shutdowns and unscheduled
       maintenances;

    c.   Whether CAT breached its warranty obligations;

    d.   Whether CAT breached its implied warranties;

    e.   Whether CAT violated its statutory consumer protection obligations;

    f.   Whether CAT knew its CRS  was defective;

g.   When CAT learned that its CRS was defectively designed and incapable of reliable thermal regeneration in a real-world setting;

h.   Whether CAT knew that its CRS would not operate under all conditions, and all applications, without unscheduled maintenance for the represented expected life of the MY2007 CAT Engine;

i.   Whether CAT failed to disclose the design defect in its CRS exhaust emission control;

j.   Whether the design defect diminished the value of the vehicles equipped with the MY2007 CAT Engine;

k.   Whether Plaintiffs and the members of the Classes have suffered damages as a result of the conduct alleged herein, and if so, the measure of such damage.

## TOLLING AND ESTOPPEL

84.   Plaintiffs' causes of action did not arise until Plaintiffs discovered, or by the exercise of reasonable diligence should have discovered, that they were injured by CAT's wrongful conduct as alleged herein. Because CAT concealed and failed to disclose the design defect with its MY2007 CAT Engine and its CRS exhaust emission control, and because CAT affirmatively warranted and misrepresented that the emission related parts and components were free of defects, Plaintiffs did not and could not have discovered the defect through reasonable diligence.

85.   The applicable statutes of limitations have been tolled by CAT's knowing and active concealment of the material facts regarding the defective MY2007 CAT Engine, and in particular its CRS exhaust emission control and by CAT's affirmative warranties and misrepresentations that the emissions system was free of defects. CAT kept Plaintiffs and the

members of the Classes ignorant of vital information essential to pursue their claims, without any fault or lack of diligence on the part of Plaintiffs and class members.

86.     CAT was and is under a continuous duty to disclose to Plaintiffs and the members of the Classes the true character, quality, and nature of the MY2007 CAT Engine. At all relevant times, and continuing to this day, CAT knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the MY2007 CAT Engine, including the defective nature of its CRS and the fact that the defect could not be effectively corrected.

87.     Plaintiffs and the Classes repeatedly presented their MY2007 CAT Engines to authorized CAT dealerships and repair facilities for failure of the emission related parts and components. Ineffectual repairs and replacements were performed only to have the emission related parts and components subsequently fail. In each instance CAT affirmed:

   a.   That the emission related parts and component failures were not the result of any application or installation that CAT deemed improper;

   b.   Did not involve attachments, accessory items or parts not sold or approved by CAT;

   c.   Were not the result of any improper engine maintenance, repair, neglect, or abuse;

   d.   Were not the result of improper fuel, lubricants or liquids;

   e.    Were not the result of any unreasonable delay in making the vehicle available after notification of the problem;

   f.   That the CRS failures were warrantable; and

   g.   That the CRS defects were corrected following repair and replacement.

88.     As such, CAT is estopped from making any claim that its defectively designed CRS was the result of limitations in the warranty coverage.

89.     Based on the foregoing, CAT is estopped from relying on any statutes of limitation in defense of this action. CAT is also estopped from relying on any statutes of limitation in defense of this action because it did not repair these known defects prior to selling or leasing these vehicles.

90.     Pursuant to the doctrines of Equitable Tolling, Equitable Estoppel, and Fraudulent Concealment, the period for bringing claims shall not be barred due to any statute of limitations or statute of repose. With respect to each and every cause of action and Count asserted herein, Plaintiffs expressly plead Equitable Tolling, Equitable Estoppel, and Fraudulent Concealment and its application thereto.

91.     CAT knew, or should have known that the emissions control technology, the CRS deployed in the MY 2007 Engines was inadequately tested for reliability and durability; that CAT chose the CRS technology to advance their own interest in making the CRS patentable and at lower costs; and that its emissions controls would not, and could not reliably regenerate the DPF under all conditions and all application for 1,000,000 miles without unscheduled maintenance as it represented.

92.     CAT knew that it was doing repeated authorized warranty repairs of the CRS inducing the operators of the MY 2007 Engines to believe that the defects in the CRS were warrantable when it knew or should have known that the CRS failures were the direct result of a defective design, and advising those operators after authorized repairs that the defects causing the failures had been correct when in fact CAT knew or should have known that the defects were not and could not be corrected.

93.   CAT knew, or should have known:

a.  That it was deploying emissions controls that were new and proprietary;

b.  That its heavy duty diesel engines, and the MY 2007 Engines in particular would require CAT authorized diesel technicians, and licensed CAT software to repair;

c.  That the CRS was designed as a complex system creating exhaust temperatures in excess of 600 °C imposing extraordinary reliability and durability stresses on the system components;

d.  That commercial vehicle purchasers and lessees would need to specify the diesel engine for OEM installation and that CAT representations of performance, reliability and durability, especially of the emissions controls were material to purchasers and lessees of the MY2007 Engines;

e.  That commercial vehicle purchasers and lessees, like Plaintiffs and the class would only specify the MY 2007 Engines provided that it was fully warranted for all defects including failures of performance of the CRS;

f.  That commercial vehicle purchasers and lessees of CAT MY 2007 Engines could not specify alternative emission controls to CAT's CRS;

g.  That the commercial purchasers and lessees would not have the capacity to repair or replace the MY 2007 Engine emissions controls and would rely upon CAT to determine, through pre-sale testing, that the CRS would reliably regenerate the DPF under all condition, in all applications, for the expected operational life to overhaul, represented by CAT as 1,000,000 and would correct any defects; and,

40

h.  That CAT and only CAT designed the MY 2007 Engine CRS, drafted the Engine and Emissions Warranties, accepted repairs to the CRS as warrantable during the warranty period, and knew or should have known that the problems would and did continue because of the defective design.

94.  All conditions precedent to the filing of this Complaint have been satisfied. This Complaint has been filed prior to the expiration of any applicable statute of limitations or statute of repose.

95.  CAT is also estopped from relying upon any and all limitations on time, and mileage, and type of defect contained in any and all of its warranties because (1) CAT knew prior to sale that its MY2007 Engines were defectively designed and unlikely to reliably perform in the real world; (2) CAT deliberately withheld this information for prospective purchasers.

## ALABAMA COUNTS

### Count 1—Breach of Express Warranty (Alabama Class)

96.  Alabama Plaintiff and the Alabama Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

97.  As an express warrantor and manufacturer and merchant, CAT had certain obligations under Ala. Code 1975 § 7-2-313 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

98.  When Alabama Plaintiff and the members of the Alabama Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and

cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

99.     Additionally, when Alabama Plaintiffs and the members of the Alabama Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

100.    The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Alabama Plaintiffs and members of the Alabama Class.

101.    CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

102.    Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the Alabama Plaintiffs and the Alabama Class members.

103.    Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

104.    CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt to disclaim liability for its actions.

105.    Alabama Plaintiffs and the members of the Alabama Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

106.    CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

107.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

108.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

109.    Alabama Plaintiff and the Alabama Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

**Count 2—Breach of Implied Warranty (Alabama Class)**

110.    Alabama Plaintiff and the Alabama Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

111.    CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiff and the Alabama Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to the Alabama Plaintiff and the Alabama Class members.

112.    A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to Ala. Code 1975 § 7-2-313.

113.    CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

114.    The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

115.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

116.    Alabama Plaintiff and the Alabama Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

117.   Alabama Plaintiff and the Alabama Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

118.   CAT received timely notice regarding the problems at issue in this litigation, both through presentations of plaintiffs' vehicles at CAT technicians for warranty repair work and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

119.   Alabama Plaintiff and the Alabama Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Alabama Plaintiff and the Alabama Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

120.   As a direct and proximate result of CAT's breach of the implied warranty of merchantability, Alabama Plaintiff and the Alabama Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

## CALIFORNIA COUNTS

### Count 3—Breach of Express Warranty (California Class)

121.    California Plaintiffs and the California Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

122.    As an express warrantor and manufacturer and merchant, CAT had certain obligations under California Commercial Code § 2313 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

123.    When California Plaintiffs and the members of the California Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

124.    Additionally, when California Plaintiffs and the members of the California Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

125.    The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to California Plaintiffs and members of the California Class.

126.     CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

127.     Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the California Plaintiffs and the California Class members.

128.     Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

129.     CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

130.     California Plaintiffs and the members of the California Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

131.     CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

132.     In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and

CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void. .

133.     In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

134.     California Plaintiffs and the California Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

### Count 4—Breach of Implied Warranty (California Class)

135.     California Plaintiffs and the California Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

136.     CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiffs and the California Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to California Plaintiffs and the California Class members.

137.     A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to California Commercial Code § 2314.

138.     CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

139.    The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

140.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

141.    California Plaintiffs and the California Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

142.    California Plaintiffs and the California Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

143.    CAT received timely notice regarding the problems at issue in this litigation, both through presentations of plaintiffs' vehicles at CAT technicians for warranty repair work and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

144.    California Plaintiffs and the California Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because California Plaintiffs and the California Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and

have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

145.    As a direct and proximate result of CAT's breach of the implied warranty of merchantability, California Plaintiffs and the California Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

**Count 5—Violation of the California Unfair Competition Law (California Class)**

146.    California Plaintiffs and the California Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

147.    California Business and Professions Code § 17200, the Unfair Competition Law, prohibits any "unlawful, unfair, or fraudulent business act or practices."  CAT has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of this Law.

148.    CAT has violated the unlawful prong of § 17200 by its violations of the Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.*, as set forth above, and various warranty statutes, as set forth below.

149.    CAT has violated the fraudulent prong of § 17200 because the omissions regarding the defective nature of the MY2007 CAT Engine and its CRS exhaust emission control, as set forth in this Complaint, were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

150.    CAT has violated the unfair prong of § 17200 because the acts and practices set forth in the Complaint, including the manufacture and sale of the defective MY2007 CAT Engine and its defective CRS exhaust emission control, CAT's failure to adequately disclose and

remedy that defect, and CAT's misrepresentations regarding the defective nature of the MY2007 CAT Engine and its CRS exhaust emission control, offend established public policy, and because the harm these acts and practices cause to consumers greatly outweighs any benefits associated with those practices. CAT's conduct has also impaired competition within the heavy duty on-highway vehicles market and has prevented California Plaintiffs and the California Class from making fully informed decisions about whether to purchase or lease vehicles equipped with the MY2007 CAT Engines and/or the price to be paid to purchase or lease those vehicles.

151.    California Plaintiffs have standing to pursue this claim on behalf of the California Class because they have suffered an injury in fact, including the loss of money or property, as a result of and in reliance on CAT's unfair, unlawful, and deceptive practices. As set forth above regarding California Plaintiffs, had CAT disclosed the defect with the MY2007 CAT Engine and its CRS exhaust emission control prior to their purchases, they would not have purchased vehicles equipped with MY2007 CAT Engines or not have paid as much for those vehicles. In addition, the California Plaintiffs have expended money related to the engine defect and have suffered a diminution in value of their vehicles.

152.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of CAT's business. CAT's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated in the State of California.

153.    California Plaintiffs and the California Class request that this Court enter such orders or judgments as may be necessary to enjoin CAT from continuing its unfair, unlawful, and/or deceptive practices and to restore to California Plaintiffs and the California Class any money CAT acquired by unfair competition, including restitution and/or restitutionary

disgorgement, as provided in California Business and Professions Code § 17203 and California Civil Code § 3345, and for such other relief set forth below.

## COLORADO COUNTS

### Count 6—Breach of Express Warranty (Colorado Class)

154.    Colorado Plaintiffs and the Colorado Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

155.    As an express warrantor and manufacturer and merchant, CAT had certain obligations under COL. REV. STAT. § 4-2-104 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

156.    When Colorado Plaintiffs and the members of the Colorado Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as cover reasonable towing and travel expenses.

157.    Additionally, when Colorado Plaintiffs and the members of the Colorado Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

158.    The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Colorado Plaintiffs and members of the Colorado Class.

159.    CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

160.    Pursuant to its express warranties, CAT was obligated to correct the defect in the MY2007 CAT Engines in the vehicles owned or leased by the Colorado Plaintiffs and the Colorado Class members.

161.    Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

162.    CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

163.    Colorado Plaintiffs and the members of the Colorado Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

164.    CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

165.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system

would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void. .

166.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

167.    Colorado Plaintiffs and the Colorado Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

### Count 7—Breach of Implied Warranty (Colorado Class)

168.    Colorado Plaintiffs and the Colorado Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

169.    CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiffs and the Colorado Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to Colorado Plaintiffs and the Colorado Class members.

170.    A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to COL. REV. STAT. §4-2-314.

171.   CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

172.   The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

173.   By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

174.   Colorado Plaintiffs and the Colorado Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

175.   Colorado Plaintiffs and the Colorado Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

176.   CAT received timely notice regarding the problems at issue in this litigation, both through presentations of plaintiffs' vehicles at CAT technicians for warranty repair work, and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

177.   Colorado Plaintiffs and the members of the Colorado class have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract.  Notwithstanding this, privity is not required in this case because Colorado Plaintiffs

and the Colorado Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

178.   As a direct and proximate result of CAT's breach of the implied warranty of merchantability, Colorado Plaintiffs and the Colorado Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

**Count 8—Violations of the Colorado Consumer Protection Act (Colorado Class)**

179.   Colorado Plaintiffs and the Colorado Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

180.   CAT is a "person" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), COL. REV. STAT. § 6-1-101, *et seq*.

181.   Colorado Plaintiffs and the Colorado Class members are "consumers" for purposes of § 6-1-113(1) of the Colorado CPA who purchased or leased one or more vehicles equipped with a MY2007 CAT Engine.

182.   In the course of its business, CAT participated in deceptive trade practices that violated the Colorado CPA, including the following:

> a.   CAT represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

b. CAT provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the MY2007 CAT Engine and its CRS exhaust emission control;

c. CAT represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d. CAT engaged in unconscionable commercial practices in failing to reveal material facts and information about the MY2007 CAT Engine, which did, or tended to, mislead Colorado Plaintiffs and the Colorado Class about facts that could not reasonably be known by the consumer;

e. CAT failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

f. CAT caused Colorado Plaintiffs and the Colorado Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct;

g. CAT failed to reveal material facts to Colorado Plaintiffs and the Colorado Class with the intent that Colorado Plaintiffs and the Colorado Class members rely upon the omission;

h. CAT made material representations and statements of fact to Colorado Plaintiffs and the Colorado Class members that resulted in Colorado Plaintiffs and the Colorado Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

i.   CAT intended that Colorado Plaintiffs and the other members of the Colorado Class members rely on their misrepresentations and omissions, so that Colorado Plaintiffs and other Colorado Class members would purchase vehicles equipped with the MY2007 CAT Engines.

183.   Had Colorado Plaintiffs and other members of the Colorado Class known of the defective nature of the MY 2007 CAT Engines, they would not have purchased or leased vehicles equipped with the Engines or would have paid less for them.

184.   The foregoing acts, omissions and practices proximately caused Colorado Plaintiffs and the other members of the Colorado Class to suffer actual damages in the form of, *inter alia*, diminution in value of the vehicles equipped with MY2007 CAT Engines, and are entitled to recover such damages, together with all other appropriate damages, attorneys' fees and costs of suit.

## **FLORIDA COUNTS**

### **Count 9—Breach of Express Warranty (Florida Class)**

185.   Florida Plaintiffs and the Florida Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

186.   As an express warrantor and manufacturer and merchant, CAT had certain obligations under Fla. Stat. § 672.313 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

187.   When Florida Plaintiffs and the members of the Florida Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and

cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

188.    Additionally, when Florida Plaintiffs and the members of the Florida Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

189.    The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Florida Plaintiffs and members of the Florida Class.

190.    CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

191.    Pursuant to its express warranties, CAT was obligated to correct the defects in the MY2007 CAT Engines in the vehicles owned or leased by the Florida Plaintiffs and the Florida Class members.

192.    Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

193.    CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

194.    Florida Plaintiffs and the members of the Florida Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

195.    CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

196.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

197.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

198.    Florida Plaintiffs and the Florida Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

**Count 10—Breach of Implied Warranty (Florida Class)**

199.   Florida Plaintiffs and the Florida Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

200.   CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiffs and the Florida Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to Florida Plaintiffs and the Florida Class members.

201.   A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to Fla. Stat. § 672.314.

202.   CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

203.   The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

204.   By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

205.   Florida Plaintiffs and the Florida Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

206.    Florida Plaintiffs and the Florida Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

207.    CAT received timely notice regarding the problems at issue in this litigation, both through presentation of Plaintiffs' vehicles at CAT technicians for warranty repair work, and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

208.    Florida Plaintiffs and the members of the Florida class have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Florida Plaintiffs and the Florida Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

209.    As a direct and proximate result of CAT's breach of warranties, Florida Plaintiffs and the Florida Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

**Count 11—Breach of Contract/Common Law Warranty (Florida Class)**

210.    Florida Plaintiffs and the Florida Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

211.   To the extent CAT's obligations under the Emissions Warranty and Engine Warranty are deemed not to be a warranty under Florida's Commercial Code, Florida Plaintiffs plead in the alternative under common law warranty and contract law. CAT limited the remedies available to Florida Plaintiffs and the Florida Class to just repairs and adjustments needed to correct defects in materials or workmanship, and/or warranted the quality or nature of those parts and services to Florida Plaintiffs.

212.   CAT breached this warranty or contract obligation by, among other things, failing to repair the defect in the MY2007 CAT Engines CRS exhaust emissions control.

213.   Florida Plaintiffs and the Florida Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

214.   As a direct and proximate result of CAT's breach of contract or common law warranty, Florida Plaintiffs and the Florida Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## Count 12—Violation of Florida's Unfair and Deceptive Trade Practices Act
### (Florida Class)

215.   Florida Plaintiffs and the Florida Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

216.   CAT's business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the Florida Unfair and Deceptive Trade Practices Act, § 501.201, *et seq*., Florida Statutes ("FUDTPA").

217.   At all relevant times, Florida Plaintiffs and all members of the Florida Class were "consumers" within the meaning of the FDUTPA. § 501.203(7), Fla. Stat.

218.   CAT's conduct, as set forth herein, occurred in the conduct of "trade or commerce" within the meaning of the FDUTPA. § 501.203(8), Fla. Stat.

219.   The practices of CAT, described above, violate the FDUTPA for, *inter alia*, one or more of the following reasons:

    a.   CAT represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

    b.   CAT provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the MY2007 CAT Engine and its CRS exhaust emission control;

    c.   CAT represented that goods or services were of a particular standard, quality, or grade, when they were of another;

    d.   CAT engaged in unconscionable commercial practices in failing to reveal material facts and information about the MY2007 CAT Engine, which did, or tended to, mislead Florida Plaintiffs and the Florida Class about facts that could not reasonably be known by the consumer;

    e.   CAT failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

f.  CAT caused Florida Plaintiffs and the Florida Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct;

g.  CAT failed to reveal material facts to Florida Plaintiffs and the Florida Class with the intent that Florida Plaintiffs and the Florida Class members rely upon the omission;

h.  CAT made material representations and statements of fact to Florida Plaintiffs and the Florida Class members that resulted in Florida Plaintiffs and the Florida Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

i.  CAT intended that Florida Plaintiffs and the other members of the Florida Class members rely on their misrepresentations and omissions, so that Florida Plaintiffs and other Florida Class members would purchase vehicles equipped with the MY2007 CAT Engines.

220.  CAT's actions impact the public interest because Florida Plaintiffs and members of the Florida Class were injured in exactly the same way as thousands of others purchasing and/or leasing the vehicles with MY2007 CAT Engines as a result of and pursuant to CAT's generalized course of deception.

221.  Had Florida Plaintiffs and other members of the Florida Class known of the defective nature of the MY 2007 CAT Engines, they would not have purchased or leased vehicles equipped with the Engines or would have paid less for them.

222.  The foregoing acts, omissions and practices proximately caused Florida Plaintiffs and the other members of the Florida Class to suffer actual damages in the form of, *inter alia*,

diminution in value of the vehicles equipped with MY2007 CAT Engines, and are entitled to recover such damages, together with all other appropriate damages, attorneys' fees and costs of suit.

## **GEORGIA COUNTS**

### **Count 13—Breach of Express Warranty (Georgia Class)**

223.    Georgia Plaintiff and the Georgia Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

224.    As an express warrantor and manufacturer and merchant, CAT had certain obligations under Ga. Code Ann., § 11-2-313, to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

225.    When Georgia Plaintiff and the members of the Georgia Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

226.    Additionally, when Georgia Plaintiff and the members of the Georgia Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

227. The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Georgia Plaintiff and members of the Georgia Class.

228. CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

229. Pursuant to its express warranties, CAT was obligated to correct the defects in the MY2007 CAT Engines in the vehicles owned or leased by the Georgia Plaintiff and the Georgia Class members.

230. Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

231. CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

232. Georgia Plaintiff and the members of the Georgia Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

233. CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

234. In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system

would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

235.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

236.    Georgia Plaintiff and the Georgia Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

### Count 14—Breach of Implied Warranty (Georgia Class)

237.    Georgia Plaintiff and the Georgia Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

238.    CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiff and the Georgia Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to Georgia Plaintiff and the Georgia Class members.

239.    A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to Ga. Code Ann., § 11-2-314.

240.    CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

241.    The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

242.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

243.    Georgia Plaintiff and the Georgia Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

244.    Georgia Plaintiff and the Georgia Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

245.    CAT received timely notice regarding the problems at issue in this litigation, both through presentation of Plaintiff's vehicles at CAT technicians for warranty repair work, and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

246.    Georgia Plaintiff and the members of the Georgia class have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Georgia Plaintiff and

the Georgia Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

247.    As a direct and proximate result of CAT's breach of warranties, Georgia Plaintiff and the Georgia Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

## ILLINOIS COUNTS

### Count 15—Breach of Express Warranty (Illinois Class)

248.    Illinois Plaintiffs and the Illinois Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

249.    As an express warrantor and manufacturer and merchant, CAT had certain obligations under 810 Ill. Comp. Stat. 5/2-313 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

250.    When Illinois Plaintiffs and the members of the Illinois Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

251. Additionally, when Illinois Plaintiffs and the members of the Illinois Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

252. The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Illinois Plaintiffs and members of the Illinois Class.

253. CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

254. Pursuant to its express warranties, CAT was obligated to correct the defect in the MY2007 CAT Engines in the vehicles owned or leased by the Illinois Plaintiffs and the Illinois Class members.

255. Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

256. CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

257. Illinois Plaintiffs and the members of the Illinois Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused

or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

258.     CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

259.     In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

260.     In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

261.     Illinois Plaintiffs and the Illinois Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

### Count 16—Breach of Implied Warranty (Illinois Class)

262.     Illinois Plaintiffs and the Illinois Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

263.     CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiffs and the Illinois Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to Illinois Plaintiffs and the Illinois Class members.

264.     A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to 801 Ill. Comp. Stat. 5/2-314 and 5/2A-212.

265.     CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

266.     The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

267.     By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

268.     Illinois Plaintiffs and the Illinois Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

269.     Illinois Plaintiffs and the Illinois Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or

prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

270.    CAT received timely notice regarding the problems at issue in this litigation, both through presentations of plaintiffs' vehicles at CAT technicians for warranty repair work and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

271.    Illinois Plaintiffs and the Illinois Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Illinois Plaintiffs and the Illinois Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

272.    As a direct and proximate result of CAT's breach of warranties, Illinois Plaintiffs and the Illinois Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

**Count 17—Violation of Illinois Consumer Fraud and Uniform Deceptive Trade Practices Acts (Illinois Class)**

273.    Illinois Plaintiffs and the Illinois Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

274.    The Illinois Plaintiffs and the Illinois Class members are consumers under the Illinois Consumer Fraud Act and Defendant is a " person" within the meaning of 815 Ill. Comp. Stat. 510/1(5).

275.    Defendant engaged, and continue to engage, in the wrongful conduct alleged herein in the course of trade and commerce, as defined in 815 ILCS 505/2 and 815 ILCS 510/2.

276.    815 ILCS 505/2 (Illinois Consumer Fraud Act) prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" , approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."

277.    815 ILCS 510/2 provides that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following:  "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have...;  (7) represents that goods or services are of a particular standard, quality, or grade…  if they are not; …  [and]  (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

278.    CAT represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have, including, inter alia, that its MY2007 CAT Engines would run 1,000,000 miles.

279.    CAT provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the MY2007 CAT Engine and its CRS exhaust emission control.

280.    CAT represented that goods or services were of a particular standard, quality, or grade, when they were of another.

281.    CAT engaged in unconscionable commercial practices in failing to reveal material facts and information about the MY2007 CAT Engine, which did, or tended to, mislead Illinois Plaintiffs and the Illinois Class about facts that could not reasonably be known by the consumer.

282.    CAT failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner.

283.    CAT caused Illinois Plaintiffs and the Illinois Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct.

284.    CAT deliberately withheld material facts to Illinois Plaintiffs and the Illinois Class with the intent that Illinois Plaintiffs and the Illinois Class members rely upon the omission.

285.    CAT made material representations and statements of fact to Illinois Plaintiffs and the Illinois Class members that resulted in Illinois Plaintiffs and the Illinois Class reasonably believing the represented or suggested state of affairs to be other than what they actually were.

286.     CAT intended that Illinois Plaintiffs and the other members of the Illinois Class members rely on their misrepresentations and omissions, so that Illinois Plaintiffs and other Illinois Class members would purchase vehicles equipped with the MY2007 CAT Engines.

287.     Had CAT disclosed the omitted material, Illinois Plaintiffs and other members of the Illinois Class would not have purchased or leased vehicles equipped with the MY CAT Engines or would have paid less for them.

288.     The foregoing acts, omissions and practices proximately caused Illinois Plaintiffs and the other members of the Illinois Class to suffer actual damages in the form of, inter alia, diminution in value of the vehicles equipped with MY2007 CAT Engines.

289.     CAT's conduct was knowing and intentional and with malice and demonstrated a complete lack of care and recklessness and was in conscious disregard for the rights of Illinois Plaintiffs and the Illinois Class Members.

290.     As a result of this wrongful conduct, Illinois Plaintiffs and the Illinois Class have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, punitive damages, equitable relief, diminution of value, and reasonable attorneys' fees.

291.     Defendants conduct as aforesaid was unfair as offensive to public policy, unscrupulous, unethical and immoral, and caused substantial injury to consumers.

292.     As a direct and proximate result of Defendants' deceptive, misleading, unfair, or unconscionable practices, as set forth above, Plaintiffs and the other Class members sustained substantial and ascertainable damages in an amount to be determined at trial, including interest on all liquidated sums.

## INDIANA COUNTS

### Count 18—Breach of Express Warranty (Indiana Class)

293.    Indiana Plaintiffs and the Indiana Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

294.    As an express warrantor and manufacturer and merchant, CAT had certain obligations under Ind. Code § 26-1-2-313 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

295.    When Indiana Plaintiffs and the members of the Indiana Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

296.    Additionally, when Indiana Plaintiffs and the members of the Indiana Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

297.    The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Indiana Plaintiffs and members of the Indiana Class.

298. CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

299. Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the Indiana Plaintiffs and the Indiana Class members.

300. Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

301. CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

302. Indiana Plaintiffs and the members of the Indiana Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

303. CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

304. In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and

CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

305.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed  MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

306.    Indiana Plaintiffs and the Indiana Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

### Count 19—Breach of Implied Warranty (Indiana Class)

307.    Indiana Plaintiffs and the Indiana Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

308.    CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiff and the Indiana Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to Indiana Plaintiffs and the Indiana Class members.

309.    A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to Ind. Code §26-1-2-314.

310.    CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

311.    The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

312.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

313.    Indiana Plaintiffs and the Indiana Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

314.    Indiana Plaintiffs and the Indiana Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

315.    CAT received timely notice regarding the problems at issue in this litigation, both through presentations of plaintiffs' vehicles at CAT technicians for warranty repair work and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

316.    Indiana Plaintiffs and the Indiana Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Indiana Plaintiffs and the Indiana Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights

under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

317.    As a direct and proximate result of CAT's breach of warranties, Indiana Plaintiffs and the Indiana Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

**Count 20—Violations of Indiana Deceptive Consumer Sales Act (Indiana Class)**

318.    Indiana Plaintiffs and the Indiana Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

319.    CAT's business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the Indiana Deceptive Consumer Sales Act, Ind. Code §24-5-0.5, *et seq*. ("IDCSA").

320.    CAT is a person with the meaning Ind. Code § 24-5-0.5-2(2).

321.    CAT's conduct, as set forth herein, occurred in the conduct of trade or commerce.

322.    The practices of CAT, described above, violate the IDCSA for, inter alia, one or more of the following reasons:

      a.    CAT represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

      b.    CAT provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the MY2007 CAT Engine and its CRS exhaust emission control;

c.  CAT represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d.  CAT engaged in unconscionable commercial practices in failing to reveal material facts and information about the MY2007 CAT Engine, which did, or tended to, mislead Indiana Plaintiffs and the Indiana Class about facts that could not reasonably be known by the consumer;

e.  CAT failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

f.  CAT caused Indiana Plaintiffs and the Indiana Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct;

g.  CAT failed to reveal material facts to Indiana Plaintiffs and the Indiana Class with the intent that Indiana Plaintiffs and the Indiana Class members rely upon the omission;

h.  CAT made material representations and statements of fact to Indiana Plaintiffs and the Indiana Class members that resulted in Indiana Plaintiffs and the Indiana Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

i.  CAT intended that Indiana Plaintiffs and the other members of the Indiana Class members rely on their misrepresentations and omissions, so that Indiana Plaintiffs and other Indiana Class members would purchase vehicles equipped with the MY2007 CAT Engines.

323.    Had Indiana Plaintiffs and other members of the Indiana Class known of the defective nature of the MY 2007 CAT Engines, they would not have purchased or leased vehicles equipped with the Engines or would have paid less for them.

324.    The foregoing acts, omissions and practices proximately caused Indiana Plaintiffs and the other members of the Indiana Class to suffer actual damages in the form of, inter alia, diminution in value of the vehicles equipped with MY2007 CAT Engines, and are entitled to recover such damages, together with all other appropriate damages, attorneys' fees and costs of suit.

## KANSAS COUNTS

### Count 21—Breach of Express Warranty (Kansas Class)

325.    Kansas Plaintiff and the Kansas Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

326.    As an express warrantor and manufacturer and merchant, CAT had certain obligations under KAN. STAT. § 84-2-104 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

327.    When Kansas Plaintiff and the members of the Kansas Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

328.    Additionally, when Kansas Plaintiff and the members of the Kansas Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as

used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

329.     The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Kansas Plaintiff and members of the Kansas Class.

330.     CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

331.     Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the Kansas Plaintiff and the Kansas Class members.

332.     Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

333.     CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

334.     Kansas Plaintiff and the members of the Kansas Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

335.    CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

336.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

337.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed  MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

338.    Kansas Plaintiff and the Kansas Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

**Count 22—Breach of Contract/Common Law Warranty (Kansas Class)**

339.    Kansas Plaintiff and the Kansas Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

340.    To the extent CAT's obligations under the Emissions Warranty and Engine Warranty are deemed not to be a warranty under the Uniform Commercial Code as adopted in Kansas, Kansas Plaintiff pleads in the alternative under common law warranty and contract law.

CAT limited the remedies available to Kansas Plaintiff and the Kansas Class to just repairs and adjustments needed to correct defects in materials or workmanship, and/or warranted the quality or nature of those parts and services to Kansas Plaintiff and Kansas Class Members.

341.   CAT breached this warranty or contract obligation by, among other things, failing to repair the defect in the MY2007 CAT Engines CRS exhaust emissions control.

342.   Kansas Plaintiff and the Kansas Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

343.   As a direct and proximate result of CAT's breach of contract or common law warranty, Kansas Plaintiff and the Kansas Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## LOUISIANA COUNTS

### Count 23—Breach of Express Warranty (Louisiana Class)

344.   Louisiana Plaintiffs and the Louisiana Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

345.   As an express warrantor and manufacturer and merchant, CAT had certain obligations under La. Civ. Code Ann. art. 2520 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

346.    When Louisiana Plaintiffs and the members of the Louisiana Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

347.    Additionally, when Louisiana Plaintiffs and the members of the Louisiana Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

348.    The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Louisiana Plaintiffs and members of the Louisiana Class.

349.    CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

350.    Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the Louisiana Plaintiffs and the Louisiana Class members.

351.    Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

352.    CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

353.    Louisiana Plaintiffs and the members of the Louisiana Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

354.    CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

355.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

356.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing

parts into its defectively designed  MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

357.   Louisiana Plaintiffs and the Louisiana Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

### Count 24—Breach of Implied Warranty (Louisiana Class)

358.   Louisiana Plaintiffs and the Louisiana Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

359.   CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiffs and the Louisiana Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to Louisiana Plaintiffs and the Louisiana Class members.

360.   A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to La. Civ. Code Ann. art. 2475.

361.   CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

362.   The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines,

when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

363.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

364.    Louisiana Plaintiffs and the Louisiana Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

365.    Louisiana Plaintiffs and the Louisiana Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

366.    CAT received timely notice regarding the problems at issue in this litigation, both through presentations of plaintiffs' vehicles at CAT technicians for warranty repair work and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

367.    Louisiana Plaintiffs and the Louisiana Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Louisiana Plaintiffs and the Louisiana Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

368.    As a direct and proximate result of CAT's breach of the implied warranty of merchantability, Louisiana Plaintiffs and the Louisiana Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

**MARYLAND COUNTS**

**Count 25—Breach of Express Warranty (Maryland Class)**

369.    Maryland Plaintiffs and the Maryland Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

370.    As an express warrantor and manufacturer and merchant, CAT had certain obligations under Md. Comm. Code § 2-313 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

371.    When Maryland Plaintiffs and the members of the Maryland Class purchased and/or leased their vehicles equipped with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

372.    Additionally, when Maryland Plaintiffs and the members of the Maryland Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life,"

and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

373. The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Maryland Plaintiffs and members of the Maryland Class.

374. CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

375. Pursuant to its express warranties, CAT was obligated to correct the defects in the MY2007 CAT Engines in the vehicles owned or leased by the Maryland Plaintiffs and the Maryland Class members.

376. Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

377. CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

378. Maryland Plaintiffs and the members of the Maryland Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

379. CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

380.     In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

381.     In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

382.     Maryland Plaintiffs and the Maryland Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

**Count 26—Breach of Contract/Common Law Warranty (Maryland Class)**

383.     Maryland Plaintiffs and the Maryland Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

384.     To the extent CAT's obligations under the Emissions Warranty and Engine Warranty are deemed not to be a warranty under the Maryland Code, Maryland Plaintiffs plead in the alternative under common law warranty and contract law. CAT limited the remedies available to Maryland Plaintiffs and the Maryland Class to just repairs and adjustments needed to

correct defects in materials or workmanship, and/or warranted the quality or nature of those parts and services to Maryland Plaintiffs and the Maryland Class.

385.    CAT breached this warranty or contract obligation by, among other things, failing to repair the defect in the MY2007 CAT Engines CRS exhaust emissions control.

386.    Maryland Plaintiffs and the Maryland Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

387.    As a direct and proximate result of CAT's breach of contract or common law warranty, Maryland Plaintiffs and the Maryland Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### Count 27 —Breach of Implied Warranty (Maryland Class)

388.    Maryland Plaintiffs and the Maryland Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

389.    CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Maryland Plaintiffs and Maryland Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to Maryland Plaintiffs and Maryland Class members.

390.    A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to Md. Code Com. Law § 2-314.

391.    CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

392.    The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

393.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

394.    Maryland Plaintiffs and the Maryland Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

395.    Maryland Plaintiffs and the Maryland Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

396.    CAT received timely notice regarding the problems at issue in this litigation, both through presentations of plaintiffs' vehicles at CAT technicians for warranty repair work and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

397.     Maryland Plaintiffs and the Maryland Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Maryland Plaintiffs and the Maryland Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

398.     As a direct and proximate result of CAT's breach of the implied warranty of merchantability, Maryland Plaintiffs and the Maryland Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

**Count 28—Violation of Maryland's Consumer Protection Act (Maryland Class)**

399.     Maryland Plaintiffs and the Maryland Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

400.     CAT's business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the Maryland Consumer Protection Act, Md. Code Com. Law § 13-101, *et seq*. ("MCPA").

401.     At all relevant times, Maryland Plaintiffs and all members of the Maryland Class were "consumers" and "persons" within the meaning of the MCPA.

402.     CAT's conduct, as set forth herein, occurred in the conduct of a sale or consumer goods within the meaning of the MCPA, Md. Code Com. Law § 13-101(i).

403.    The practices of CAT, described above, violate the MCPA for, inter alia, one or more of the following reasons:

  a.  CAT represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

  b.  CAT provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the MY2007 CAT Engine and its CRS exhaust emission control;

  c.  CAT represented that goods or services were of a particular standard, quality, or grade, when they were of another;

  d.  CAT advertised the MY2007 CAT Engines with an intent not to sell them as advertised;

  e.  CAT engaged in unconscionable commercial practices in failing to reveal material facts and information about the MY2007 CAT Engine, which did, or tended to, mislead Maryland Plaintiffs and the Maryland Class about facts that could not reasonably be known by the consumer;

  f.  CAT failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

  g.  CAT caused Maryland Plaintiffs and the Maryland Class Members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

  h.  CAT failed to reveal material facts to Maryland Plaintiffs and the Maryland Class members with the intent that they rely upon the omissions;

i.  CAT made material representations and statements of fact to Maryland Plaintiffs and the Maryland Class Members that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were;

j.  CAT intended that Maryland Plaintiffs and the other members of the Maryland Class members rely on their misrepresentations and omissions, so that Maryland Plaintiffs and other Maryland Class members would purchase vehicles equipped with the MY2007 CAT Engines.

404.  CAT's actions impact the public interest because Maryland Plaintiffs and members of the Maryland Class were injured in exactly the same way as thousands of others purchasing and/or leasing the vehicles with MY2007 CAT Engines as a result of and pursuant to CAT's generalized course of deception.

405.  Had Maryland Plaintiffs and other members of the Maryland Class known of the defective nature of the MY 2007 CAT Engines, they would not have purchased or leased vehicles equipped with the Engines or would have paid less for them.

406.  The foregoing acts, omissions and practices proximately caused Maryland Plaintiffs and the other members of the Maryland Class to suffer actual damages in the form of, inter alia, diminution in value of the vehicles equipped with MY2007 CAT Engines, and are entitled to recover such damages, together with all other appropriate damages, attorneys' fees and costs of suit. Also, the State of Maryland is entitled to statutory penalties from CAT for each violation of the MCPA.

## MICHIGAN COUNTS

### Count 29—Breach of Express Warranty (Michigan Class)

407.    Michigan Plaintiffs and the Michigan Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

408.    As an express warrantor and manufacturer and merchant, CAT had certain obligations under Michigan UCC § 440.2313 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

409.    When Michigan Plaintiffs and the members of the Michigan Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

410.    Additionally, when Michigan Plaintiffs and the members of the Michigan Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

411.    The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Michigan Plaintiffs and members of the Michigan Class.

412.    CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

413.    Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the Michigan Plaintiffs and the Michigan Class members.

414.    Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

415.    CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

416.    Michigan Plaintiffs and the members of the Michigan Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

417.    CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

418.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and

CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

419.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed  MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

420.    Michigan Plaintiffs and the Michigan Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

### Count 30—Breach of the Implied Warranty (Michigan Class)

421.    Michigan Plaintiffs and the Michigan Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

422.    CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiff and the Michigan Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to Michigan Plaintiffs and the Michigan Class members.

423.    A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to Mich. Comp. Laws § 440.2314.

424.    CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

425.    The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

426.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

427.    Michigan Plaintiffs and the Michigan Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

428.    Michigan Plaintiffs and the Michigan Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

429.    CAT received timely notice regarding the problems at issue in this litigation, both through presentations of plaintiffs' vehicles at CAT technicians for warranty repair work and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

430.    Michigan Plaintiffs and the Michigan Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Michigan Plaintiffs and the Michigan Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights

under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

431.   As a direct and proximate result of CAT's breach of the implied warranty of merchantability, Michigan Plaintiffs and the Michigan Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

**Count 31—Violation of the Michigan Consumer Protection Act (Michigan Class)**

432.   Michigan Plaintiffs and the Michigan Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

433.   CAT's business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the Michigan Consumer Protection Act ("MCPA").

434.   At all relevant times, Michigan Plaintiffs and all members of the Michigan Class were "persons" within the meaning of the MCPA, M.C.L.A. § 445.902(1)(d).

435.   At all relevant times hereto, CAT was a "person" engaged in "trade or commerce" within the meaning of the MCPA, M.C.L.A. § 445.902(1)(d) and (g).

436.   The practices of CAT, described above, violate the MCPA for, inter alia, one or more of the following reasons:

    a.   CAT represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

    b.   CAT provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to

consumers regarding the performance, reliability, quality and nature of the MY2007 CAT Engine and its CRS exhaust emission control;

c. CAT represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d. CAT advertised the MY2007 CAT Engines with an intent not to sell them as advertised;

e. CAT engaged in unconscionable commercial practices in failing to reveal material facts and information about the MY2007 CAT Engine, which did, or tended to, mislead Michigan Plaintiffs and the Michigan Class about facts that could not reasonably be known by the consumer;

f. CAT failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

g. CAT caused Michigan Plaintiffs and the Michigan Class Members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

h. CAT failed to reveal material facts to Michigan Plaintiffs and the Michigan Class members with the intent that they rely upon the omissions;

i. CAT made material representations and statements of fact to Michigan Plaintiffs and the Michigan Class Members that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were;

j. CAT intended that Michigan Plaintiffs and the other members of the Michigan Class members rely on their misrepresentations and omissions, so that

Michigan Plaintiffs and other Michigan Class members would purchase vehicles equipped with the MY2007 CAT Engines.

437.    The foregoing acts, omissions and practices proximately caused Michigan Plaintiffs and the other members of the Michigan Class to suffer actual damages in the form of, inter alia, diminution in value of the vehicles equipped with MY2007 CAT Engines, and are entitled to recover such damages, together with all other appropriate damages, attorneys' fees and costs of suit.

## MINNESOTA COUNTS

### Count 32—Breach of Express Warranty (Minnesota Class)

438.    Minnesota Plaintiff and the Minnesota Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

439.    As an express warrantor and manufacturer and merchant, CAT had certain obligations under Minn. Stat. § 325G.19 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

440.    When Minnesota Plaintiff and the members of the Minnesota Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

441.    Additionally, when Minnesota Plaintiff and the members of the Minnesota Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions

Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

442.    The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Minnesota Plaintiff and members of the Minnesota Class.

443.    CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

444.    Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the Minnesota Plaintiff and the Minnesota Class members.

445.    Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

446.    CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

447.    Minnesota Plaintiff and the members of the Minnesota Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

448.    CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

449.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

450.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed  MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

451.    Minnesota Plaintiff and the Minnesota Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

**Count 33—Breach of Implied Warranty (Minnesota Class)**

452.    Minnesota Plaintiff and the Minnesota Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

453.    CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiff and the Minnesota Class members bought or leased their

vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to Minnesota Plaintiff and the Minnesota Class members.

454.    A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to Minn. Stat. § 336.2-314.

455.    CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

456.    The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

457.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

458.    Minnesota Plaintiff and the Minnesota Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

459.    Minnesota Plaintiff and the Minnesota Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

460.    CAT received timely notice regarding the problems at issue in this litigation, both through presentations of Plaintiff's vehicles at CAT technicians for warranty repair work and

through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

461.    Minnesota Plaintiff and the Minnesota Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Minnesota Plaintiff and the Minnesota Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

462.    As a direct and proximate result of CAT's breach of the implied warranty of merchantability, Minnesota Plaintiff and the Minnesota Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

### Count 34— Violations of Minnesota False Statement in Advertising Statute
### (Minnesota Class)

463.    Minnesota Plaintiff and the Minnesota Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

464.    CAT violated the Minnesota False Statements in Advertising Act, MINN. STAT. § 325F.67, *et seq*., by producing and publishing advertisements and deceptive and misleading statements regarding the MY2007 CAT Engine, which omitted to disclose information regarding the defect with the CRS exhaust emission control.

465.     CAT concealed this defect in order to increase the sale of and profit from the sale of its MY2007 CAT Engines.

466.     The Minnesota False Statements in Advertising Act applies to the transactions of Minnesota Plaintiff and the Minnesota Class in purchasing or leasing vehicles equipped with the MY2007 CAT Engine because CAT's deceptive scheme was carried out in Minnesota and affected Minnesota Plaintiff and the Minnesota Class.

467.     CAT had a duty to disclose material information to prospective purchases because it made representations about the expected useful life of its Engines which it knew to be misleading, and because it possessed material non-public information about the defect not reasonably available to purchasers and lessees.

468.     As a direct and proximate result of CAT's deceptive, unfair, and fraudulent conduct and violations of Minn. Stat. § 325F.67, *et seq.*, Minnesota Plaintiff and the Minnesota Class have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

### Count 35— Violations of Minnesota Uniform Deceptive Trade Practices Act
### (Minnesota Class)

469.     Minnesota Plaintiff and the Minnesota Class incorporate the allegations set forth above  in paragraphs 1 through 95 as if fully set forth herein.

470.     CAT engaged in – and continues to engage in – conduct that violates the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44, *et seq*. The violations include the following:

a.  CAT violated Minn. Stat. § 325D.44(5) by misrepresenting the characteristics, uses, and benefits of the MY2007 CAT Engine and by failing to disclose the defect with the CRS exhaust emission control;

b.  CAT violated Minn. Stat. § 325D.44(7) by misrepresenting the standard, quality, or grade of the MY2007 CAT Engine and by failing to disclose the defect with the CRS exhaust emission control;

c.  CAT violated Minn. Stat. § 325D.44(9) by advertising goods with intent not to sell them as advertised by failing to disclose the defect with the MY2007 CAT Engine CRS exhaust emission control; and

d.  CAT violated Minn. Stat. § 325D.44(13) by creating a likelihood of confusion and/or making misrepresentations regarding the MY2007 CAT Engine and by failing to disclose the defect with the CRS exhaust emission control.

471.   CAT's deceptive sales practices were carried out in Minnesota and affected Minnesota Plaintiff and the Minnesota Class.

472.   As a direct and proximate result of CAT's deceptive conduct and violation of Minn. Stat. § 325D.44, *et seq*., Minnesota Plaintiff and the Minnesota Class have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## MISSOURI COUNTS

### Count 36—Breach of Express Warranty (Missouri Class)

473.    Missouri Plaintiffs and the Missouri Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

474.    As an express warrantor and manufacturer and merchant, CAT had certain obligations under Mo. Rev. Stat. § 400.2-313 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

475.    When Missouri Plaintiffs and the members of the Missouri Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

476.    Additionally, when Missouri Plaintiffs and the members of the Missouri Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

477.    The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Missouri Plaintiffs and members of the Missouri Class.

478.   CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

479.   Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the Missouri Plaintiffs and the Missouri Class members.

480.   Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

481.   CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

482.   Missouri Plaintiffs and the members of the Missouri Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

483.   CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

484.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and

CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

485.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed  MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

486.    Missouri Plaintiffs and the Missouri Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

### Count 37—Breach of the Implied Warranty (Missouri Class)

487.    Missouri Plaintiffs and the Missouri Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

488.    CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiff and the Missouri Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to Missouri Plaintiffs and the Missouri Class members.

489.    A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to Mo. Rev. Stat. § 400.2-314.

490.    CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

491.    The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

492.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

493.    Missouri Plaintiffs and the Missouri Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

494.    Missouri Plaintiffs and the Missouri Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

495.    CAT received timely notice regarding the problems at issue in this litigation, both through presentations of plaintiffs' vehicles at CAT technicians for warranty repair work and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

496.    Missouri Plaintiffs and the Missouri Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Missouri Plaintiffs and the Missouri Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights

under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

497.    As a direct and proximate result of CAT's breach of the implied warranty of merchantability, Missouri Plaintiffs and the Missouri Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

## NEW JERSEY COUNTS

### Count 38—Breach of Express Warranty (New Jersey Class)

498.    New Jersey Plaintiffs and the New Jersey Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

499.    As an express warrantor and manufacturer and merchant, CAT had certain obligations under N.J. Stat. §12A:2-313 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

500.    When New Jersey Plaintiffs and the members of the New Jersey Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

501.    Additionally, when New Jersey Plaintiffs and the members of the New Jersey Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its

Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

502.   The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to New Jersey Plaintiffs and members of the New Jersey Class.

503.   CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

504.   Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the New Jersey Plaintiffs and the New Jersey Class members.

505.   Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

506.   CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

507.   New Jersey Plaintiffs and the members of the New Jersey Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

508.    CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

509.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

510.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed  MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

511.    New Jersey Plaintiffs and the New Jersey Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

### Count 39—Breach of Implied Warranty (New Jersey Class)

512.    New Jersey Plaintiffs and the New Jersey Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

513.    CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiff and the New Jersey Class members bought or leased their

vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to New Jersey Plaintiffs and the New Jersey Class members.

514.    A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to N.J. Stat. §12A:2-314.

515.    CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

516.    The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

517.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

518.    New Jersey Plaintiffs and the New Jersey Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

519.    New Jersey Plaintiffs and the New Jersey Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

520.    CAT received timely notice regarding the problems at issue in this litigation, both through presentations of plaintiffs' vehicles at CAT technicians for warranty repair work and

through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

521.    New Jersey Plaintiffs and the New Jersey Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because New Jersey Plaintiffs and the New Jersey Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

522.    As a direct and proximate result of CAT's breach of the implied warranty of merchantability, New Jersey Plaintiffs and the New Jersey Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

**Count 40—Violations of New Jersey Consumer Fraud Act (New Jersey Class)**

523.    New Jersey Plaintiffs and the New Jersey Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

524.    CAT's business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the New Jersey Consumer Fraud Act, § 56:8-1, *et seq.*, New Jersey Statutes ("NJCFA").BK. John Lamanteer, and Defendant are "persons" within the meaning of the New Jersey Consumer Fraud Act ("CFA").

525.    BK, John Lamanteer, and the New Jersey Class are "consumers" within the meaning of the CFA.

526.    At all relevant times material hereto, Defendant conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

527.    The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

528.    The practices of CAT, described above, violate the NJCFA for, inter alia, one or more of the following reasons:

a.   CAT represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have, including, inter alia, that its MY2007 CAT Engines would run 1,000,000 miles;

b.   CAT provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the MY2007 CAT Engine and its CRS exhaust emission control;

c.   CAT represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d.   CAT engaged in unconscionable commercial practices in failing to reveal material facts and information about the MY2007 CAT Engine, which did, or tended to, mislead New Jersey Plaintiffs and the New Jersey Class about facts that could not reasonably be known by the consumer;

e.   CAT failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

f.   CAT caused New Jersey Plaintiffs and the New Jersey Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct;

g.   CAT deliberately withheld material facts to New Jersey Plaintiffs and the New Jersey Class with the intent that New Jersey Plaintiffs and the New Jersey Class members rely upon the omission;

h.   CAT made material representations and statements of fact to New Jersey Plaintiffs and the New Jersey Class members that resulted in New Jersey Plaintiffs and the New Jersey Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

i.   CAT intended that New Jersey Plaintiffs and the other members of the New Jersey Class members rely on their misrepresentations and omissions, so that New Jersey Plaintiffs and other New Jersey Class members would purchase vehicles equipped with the MY2007 CAT Engines.

529.   Had CAT disclosed the omitted material, New Jersey Plaintiffs and other members of the New Jersey would not have purchased or leased vehicles equipped with the MY CAT Engines or would have paid less for them.

530.   The foregoing acts, omissions and practices proximately caused New Jersey Plaintiffs and the other members of the New Jersey Class to suffer actual damages in the form of, inter alia, diminution in value of the vehicles equipped with MY2007 CAT Engines, and are entitled to recover such damages, including treble damages under § 56:8-19, New Jersey Statutes, together with all other appropriate damages, attorneys' fees and costs of suit.

**Count 41—Breach of Implied Covenant of Good Faith and Fair Dealing (New Jersey Class)**

531.    New Jersey Plaintiffs and the New Jersey Class incorporate the allegations set forth above in paragraphs  as if fully set forth herein.

532.    Plaintiffs and the Class entered into agreements to purchase Engines with Defendant, or otherwise were in contractual privity with Defendant as a result of the express warranties described herein.

533.    The contracts and warranties were subject to the implied covenant that Defendant would conduct business with New Jersey Plaintiffs and the Class in good faith and would deal fairly with them.

534.    Defendant breached those implied covenants by selling New Jersey Plaintiffs and the Class Engines with the Defect, when it knew, or should have known, that the contracts and/or warranties were unconscionable and by abusing its discretion in the performance of the contract or by intentionally subjecting Plaintiffs and the Class to a risk beyond that which they would have contemplated at the time of purchase as well as by exiting the market and failing to provide for proper parts and service of the Engines it sold.

535.    Defendant also breached the implied covenants by not placing terms in the contracts and/or warranties that conspicuously stated to New Jersey Plaintiffs and the Class that the Engines' CRS and emissions and regeneration systems were defective as described herein.

536.    As a direct and proximate result of Defendant's breach of its implied covenants, New Jersey Plaintiffs and the New Jersey Class have been damaged in an amount to be determined at trial.

## NEW MEXICO COUNTS

### Count 42—Breach of Express Warranty (New Mexico Class)

537.    New Mexico Plaintiff and the New Mexico Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

538.    As an express warrantor and manufacturer and merchant, CAT had certain obligations under N.M. STAT. ANN. § 55-2-104 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

539.    When New Mexico Plaintiff and the members of the New Mexico Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

540.    Additionally, when New Mexico Plaintiff and the members of the New Mexico Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

541.    The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to New Mexico Plaintiff and members of the New Mexico Class.

542.    CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

543.    Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the New Mexico Plaintiff and the New Mexico Class members.

544.    Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

545.    CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

546.    New Mexico Plaintiff and the members of the New Mexico Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

547.    CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

548.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and

CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

549.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed  MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

550.    New Mexico Plaintiff and the New Mexico Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

### Count 43—Breach of Implied Warranty (New Mexico Class)

551.    New Mexico Plaintiff and the New Mexico Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

552.    CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiff and the New Mexico Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to New Mexico Plaintiff and the New Mexico Class members.

553.    A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to N.M. Stat. § 55-2-104.

554.    CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

555.    The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

556.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

557.    New Mexico Plaintiff and the New Mexico Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

558.    New Mexico Plaintiff and the New Mexico Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

559.    CAT received timely notice regarding the problems at issue in this litigation, both through presentations of plaintiffs' vehicles at CAT technicians for warranty repair work and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

560.    New Mexico Plaintiff and the New Mexico Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because New Mexico Plaintiff and the New Mexico Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and

have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

561.   As a direct and proximate result of CAT's breach of the implied warranty of merchantability, New Mexico Plaintiff and the New Mexico Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

**Count 44—Violations of the New Mexico Unfair Trade Practices Act (New Mexico Class)**

562.   New Mexico Plaintiff and the New Mexico Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

563.   CAT's business acts and practices alleged herein constitute unfair or deceptive acts or practices under the New Mexico Unfair Trade Practices Act, §§ 57-12-1, *et seq*., ("NMUTPA").

564.   The practices of CAT, described above, violate the NMUTPA for, inter alia, one or more of the following reasons:

      a.   CAT represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

      b.   CAT provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the MY2007 CAT Engine and its CRS exhaust emission control;

      c.   CAT represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d.  CAT engaged in unconscionable commercial practices in failing to reveal material facts and information about the MY2007 CAT Engine, which did, or tended to, mislead New Mexico Plaintiff and the New Mexico Class about facts that could not reasonably be known by the consumer;

e.  CAT failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

f.  CAT caused New Mexico Plaintiff and the New Mexico Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct;

g.  CAT failed to reveal material facts to New Mexico Plaintiff and the New Mexico Class with the intent that New Mexico Plaintiff and the New Mexico Class members rely upon the omission;

h.  CAT made material representations and statements of fact to New Mexico Plaintiff and the New Mexico Class members that resulted in New Mexico Plaintiff and the New Mexico Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

i.  CAT intended that New Mexico Plaintiff and the other members of the New Mexico Class members rely on their misrepresentations and omissions, so that New Mexico Plaintiff and other New Mexico Class members would purchase vehicles equipped with the MY2007 CAT Engines.

565.  The foregoing acts, omissions and practices proximately caused New Mexico Plaintiff and the other members of the New Mexico Class to suffer actual damages in the form of, inter alia, diminution in value of the vehicles equipped with MY2007 CAT Engines, and are

entitled to recover such damages, together with all other appropriate damages, attorneys' fees and costs of suit, as well as treble damages under NMUTPA § 57-12-10(C).

## NEW YORK COUNTS

### Count 45—Breach of Express Warranty (New York Class)

566.    New York Plaintiff and the New York Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

567.    As an express warrantor and manufacturer and merchant, CAT had certain obligations under N.Y. U.C.C. § 2-313 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

568.    When New York Plaintiff and the members of the New York Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

569.    Additionally, when New York Plaintiff and the members of the New York Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

570.    The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to New York Plaintiff and members of the New York Class.

571.    CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

572.    Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the New York Plaintiff and the New York Class members.

573.    Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

574.    CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

575.    New York Plaintiff and the members of the New York Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

576.    CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

577.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system

would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

578.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed  MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

579.    New York Plaintiff and the New York Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

### Count 46—Breach of Implied Warranty (New York Class)

580.    New York Plaintiff and the New York Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

581.    CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiff and the New York Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to New York Plaintiff and the New York Class members.

582.    A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to N.Y. U.C.C. § 2-314.

583.   CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

584.   The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

585.   By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

586.   New York Plaintiff and the New York Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

587.   New York Plaintiff and the New York Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

588.   CAT received timely notice regarding the problems at issue in this litigation, both through presentations of Plaintiff's vehicles at CAT technicians for warranty repair work and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

589.   New York Plaintiff and the New York Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because New York Plaintiff

and the New York Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

590.    As a direct and proximate result of CAT's breach of the implied warranty of merchantability, New York Plaintiff and the New York Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

### Count 47—Violation of New York General Business Law (New York Class)

591.    New York Plaintiff and the New York Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

592.    CAT's business acts and practices alleged herein constitute deceptive acts or practices under the New York General Business Law, Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349 ("NYGBL").

593.    The practices of CAT, described throughout this Complaint, violate the NYGBL for, inter alia, one or more of the following reasons:

a.  CAT engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the MY2007 CAT Engine and its CRS exhaust emission control, which did, or tended to, mislead New York Plaintiff and the New York Class about facts that could not reasonably be known by the consumers;

135

b.  CAT failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

c.  CAT caused New York Plaintiff and the New York Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

d.  CAT failed to reveal material facts to New York Plaintiff and the New York Class with the intent that New York Plaintiff and the New York Class members rely upon the omission;

e.  CAT made material representations and statements of fact to New York Plaintiff and the New York Class that resulted in New York Plaintiff and the New York Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

f.  CAT intended that New York Plaintiff and the other members of the New York Class rely on its misrepresentations and omissions, so that New York Plaintiff and other New York Class members would purchase or lease vehicles equipped with a MY2007 CAT Engine; and

g.  Under all of the circumstances, CAT's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton, and outrageous such as to shock the conscience of the community and warrant punitive damages.

594.  CAT's actions impact the public interest because New York Plaintiff and members of the New York Class were injured in exactly the same way as thousands of others purchasing and/or leasing vehicles equipped with the MY2007 CAT Engine as a result of and pursuant to CAT's generalized course of deception.

595.    Had New York Plaintiff and other members of the New York Class known of the defective nature of the MY 2007 CAT Engines, they would not have purchased or leased vehicles equipped with the Engines or would have paid less for them.

596.    The foregoing acts, omissions and practices proximately caused New York Plaintiff and the other members of the New York Class to suffer actual damages in the form of, inter alia, diminution in value of the vehicles equipped with MY2007 CAT Engines, and are entitled to recover such damages, together with all other appropriate damages, attorneys' fees and costs of suit.

## NORTH CAROLINA COUNTS

### Count 48—Breach of Express Warranty (North Carolina Class)

597.    North Carolina Plaintiff and the North Carolina Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

598.    As an express warrantor and manufacturer and merchant, CAT had certain obligations under N.C. Gen. Stat. § 25-2-313 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

599.    When North Carolina Plaintiff and the members of the North Carolina Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

600.    Additionally, when North Carolina Plaintiff and the members of the North Carolina Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new

vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

601.   The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to North Carolina Plaintiff and members of the North Carolina Class.

602.   CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

603.   Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the North Carolina Plaintiff and the North Carolina Class members.

604.   Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

605.   CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

606.   North Carolina Plaintiff and the members of the North Carolina Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

607.     CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

608.     In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

609.     In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed  MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

610.     North Carolina Plaintiff and the North Carolina Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

**Count 49—Breach of Implied Warranty (North Carolina Class)**

611.     North Carolina Plaintiff and the North Carolina Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

612.     CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiff and the North Carolina Class members bought or leased their

vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to North Carolina Plaintiff and the North Carolina Class members.

613.   A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to N.C. Gen. Stat. § 25-2-314.

614.   CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

615.   The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

616.   By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

617.   North Carolina Plaintiff and the North Carolina Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

618.   North Carolina Plaintiff and the North Carolina Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

619.   CAT received timely notice regarding the problems at issue in this litigation, both through presentations of plaintiffs' vehicles at CAT technicians for warranty repair work and

through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

620.    North Carolina Plaintiff and the North Carolina Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because North Carolina Plaintiff and the North Carolina Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

621.    As a direct and proximate result of CAT's breach of the implied warranty of merchantability, North Carolina Plaintiff and the North Carolina Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

## Count 50— Violations of North Carolina's Unfair and Deceptive Trade Practices Act
### (North Carolina Class)

622.    North Carolina Plaintiff and the North Carolina Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

623.    North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75.1-1 ("UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."  CAT's business acts and practices alleged herein violate the UDTPA.

624.    The purchase or lease of vehicles equipped with the MY2007 CAT Engines by North Carolina Plaintiff and the North Carolina Class Members as described herein constitute transactions in commerce within the meaning of UDTPA.

625.    The practices of CAT violate the UDTPA for, inter alia, one or more of the following reasons:

a.  CAT represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

b.  CAT provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the MY2007 CAT Engine and its CRS exhaust emission control;

c.  CAT represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d.  CAT advertised the MY2007 CAT Engines with an intent not to sell them as advertised;

e.  CAT engaged in unconscionable commercial practices in failing to reveal material facts and information about the MY2007 CAT Engine, which did, or tended to, mislead North Carolina Plaintiff and the North Carolina Class about facts that could not reasonably be known by the consumer;

f.  CAT failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

g.  CAT caused North Carolina Plaintiff and the North Carolina Class Members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

h.  CAT failed to reveal material facts to North Carolina Plaintiff and the North Carolina Class members with the intent that they rely upon the omissions;

i.  CAT made material representations and statements of fact to North Carolina Plaintiff and the North Carolina Class Members that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were;

j.  CAT intended that North Carolina Plaintiff and the other members of the North Carolina Class members rely on their misrepresentations and omissions, so that North Carolina Plaintiff and other North Carolina Class members would purchase vehicles equipped with the MY2007 CAT Engines.

626.   The conduct of CAT was likely to mislead consumers and CAT intended that North Carolina Plaintiff and the North Carolina Class Members rely on their misrepresentations.

627.   The conduct of CAT offends established public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

628.   The foregoing acts, omissions and practices proximately caused North Carolina Plaintiff and the other members of the North Carolina Class to suffer actual damages in the form of, inter alia, diminution in value of the vehicles equipped with MY2007 CAT Engines, and are entitled to recover such damages, together with all other appropriate damages, attorneys' fees and costs of suit.

## OHIO COUNTS

**Count 51—Breach of Express Warranty (Ohio Class)**

629.   Ohio Plaintiff and the Ohio Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

630.   As an express warrantor and manufacturer and merchant, CAT had certain obligations under Ohio Rev.Code § 1302.26 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

631.   When Ohio Plaintiff and the members of the Ohio Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

632.   Additionally, when Ohio Plaintiff and the members of the Ohio Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

633.   The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Ohio Plaintiff and members of the Ohio Class.

634.    CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

635.    Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the Ohio Plaintiff and the Ohio Class members.

636.    Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

637.    CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

638.    Ohio Plaintiff and the members of the Ohio Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

639.    CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

640.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and

CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

641.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed  MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

642.    Ohio Plaintiff and the Ohio Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

### Count 52—Breach of Implied Warranty in Tort (Ohio Class)

643.    Ohio Plaintiff and the Ohio Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

644.    CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiff and the Ohio Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to Ohio Plaintiff and the Ohio Class members.

645.    A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to Ohio Rev. Code § 1302.27.

646.    CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

647.    The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

648.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

649.    Ohio Plaintiff and the Ohio Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

650.    Ohio Plaintiff and the Ohio Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

651.    CAT received timely notice regarding the problems at issue in this litigation, both through presentations of Plaintiff's vehicles at CAT technicians for warranty repair work and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

652.    Ohio Plaintiff and the Ohio Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Ohio Plaintiff and the Ohio Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the

warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

653.    As a direct and proximate result of CAT's breach of the implied warranty of merchantability, Ohio Plaintiff and the Ohio Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

### Count 53—Negligent Design/Engineering/Manufacturing (Ohio Class)

654.    Ohio Plaintiff and the Ohio Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

655.    CAT owed Ohio Plaintiff and the Ohio Class a non-delegable duty to exercise ordinary and reasonable care to properly design, engineer, and manufacture the MY2007 CAT Engines against foreseeable malfunctions and to design, engineer and manufacture the Engines and CRS exhaust emissions control so they would function normally. CAT also owes a continuing duty to notify Ohio Plaintiff and the Ohio Class of the problem at issue and to repair the defects.

656.    The foreseeable hazards and malfunctions include, but are not limited to, repeated instances of derating and shutdown due to failed regeneration.

657.    Ohio Plaintiff and the Ohio Class were not aware of the MY2007 CAT Engine defect described above and their latent shortcomings, or the likelihood of damage therefrom arising in the normal use of vehicles equipped with the Engines.

658.    There existed at all relevant times alternative exhaust emission control component designs and engineering which were both technically and economically feasible. Further, any

alleged benefits associated with CAT's defective designs are vastly outweighed by the real risks which include the added expenses foisted upon the Ohio Plaintiff and the Ohio Class by the defect.

659.   CAT did not design, engineer, or manufacture its MY2007 CAT Engines with reasonable care.

660.   The MY2007 CAT Engines were defective as herein alleged at the time they left CAT's factories.

661.   CAT breached its duty owed to Ohio Plaintiff and the Ohio Class to design, manufacture, and engineer its Engines to be free of emission related defects.

662.   As a direct and proximate result of this breach, Ohio Plaintiff and the Ohio Class have suffered damages.

663.   Accordingly, Ohio Plaintiff and the Ohio Class are entitled to recover appropriate damages including, but not limited to diminution of value.

## OREGON COUNTS

### Count 54—Breach of Express Warranty (Oregon Class)

664.   Oregon Plaintiff and the Oregon Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

665.   As an express warrantor and manufacturer and merchant, CAT had certain obligations under Or. Rev. Stat. §646.600, *et seq* to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

666.   When Oregon Plaintiff and the members of the Oregon Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would

correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

667.    Additionally, when Oregon Plaintiff and the members of the Oregon Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

668.    The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Oregon Plaintiff and members of the Oregon Class.

669.    CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

670.    Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the Oregon Plaintiff and the Oregon Class members.

671.    Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

672.    CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

673.    Oregon Plaintiff and the members of the Oregon Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

674.    CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

675.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

676.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

677.    Oregon Plaintiff and the Oregon Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

### Count 55—Breach of Implied Warranty (Oregon Class)

678.    Oregon Plaintiff and the Oregon Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

679.    CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiff and the Oregon Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to Oregon Plaintiff and the Oregon Class members.

680.    A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to Or. Rev. Stat. §646.600, *et seq.*

681.    CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

682.    The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

683.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

684.    Oregon Plaintiff and the Oregon Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

685.    Oregon Plaintiff and the Oregon Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

686.    CAT received timely notice regarding the problems at issue in this litigation, both through presentations of Plaintiff's vehicles at CAT technicians for warranty repair work and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

687.    Oregon Plaintiff and the Oregon Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Oregon Plaintiff and the Oregon Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

688.    As a direct and proximate result of CAT's breach of the implied warranty of merchantability, Oregon Plaintiff and the Oregon Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with

MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

### Count 56-- Violation of Oregon Unlawful Trade Practices Law (NW Navigator Coaches LLC and Oregon Class)

689.    Plaintiff adopts and incorporates herein the allegations set forth above.

690.    The Oregon Unlawful Trade Practices Act, O.R.S. § 646.600 *et seq*., stipulates that, "[a] person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person … employs any unconscionable tactic in connection with selling, renting or disposing of real estate, goods or services."

691.    CAT engaged in unlawful and deceptive acts in violation of O.R.S. § 646.608 in selling and warranting the MY2007 CAT engines. CAT failed to give Plaintiff and Class members any kind of sufficient notice or warning regarding the defects in the MY2007 CAT engine CRS, of which CAT knew or reasonably should have known, intending that Plaintiff and the Class rely upon CAT's omission when purchasing vehicles containing the MY2007 CAT engines. Plaintiff and Class Members were deceived by CAT's concealment that its MY2007 CAT engines contained a defective CRS.

692.    CAT also engaged in unlawful and deceptive practices in violation of O.R.S.§ 646.600 *et seq*. when it failed to provide the full cost to repair and replace the MY2007 CAT engines after being notified by Plaintiff and members of the Class.

693.    As a direct and proximate result of these unfair, unconscionable, and deceptive commercial practices, Plaintiff and the Class Members have been damaged and are entitled, pursuant to O.R.S. § 646.600 *et seq*., to recover actual and punitive damages as well as attorneys' fees and costs.

### **PENNSYLVANIA COUNTS**

## Count 57—Breach of Express Warranty (Pennsylvania Class)

694.     Pennsylvania Plaintiffs and the Pennsylvania Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

695.     As an express warrantor and manufacturer and merchant, CAT had certain obligations under 13 Pa. Cons. Stat. Ann. § 2313 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

696.     When Pennsylvania Plaintiffs and the members of the Pennsylvania Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

697.     Additionally, when Pennsylvania Plaintiffs and the members of the Pennsylvania Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

698.     The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Pennsylvania Plaintiffs and members of the Pennsylvania Class.

699.    CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

700.    Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the Pennsylvania Plaintiffs and the Pennsylvania Class members.

701.    Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

702.    CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

703.    Pennsylvania Plaintiffs and the members of the Pennsylvania Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

704.    CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

705.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and

CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

706.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

707.   Pennsylvania Plaintiffs and the Pennsylvania Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

### Count 58—Breach of Implied Warranty (Pennsylvania Class)

708.   Pennsylvania Plaintiffs and the Pennsylvania Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

709.   CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiffs and the Pennsylvania Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to Pennsylvania Plaintiffs and the Pennsylvania Class members.

710.   A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to 13 Pa. Cons. Stat. Ann. § 2314.

711.   CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

712.    The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

713.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

714.    Pennsylvania Plaintiffs and the Pennsylvania Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

715.    Pennsylvania Plaintiffs and the Pennsylvania Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

716.    CAT received timely notice regarding the problems at issue in this litigation, both through presentations of Plaintiffs' vehicles at CAT technicians for warranty repair work and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

717.    Pennsylvania Plaintiffs and the Pennsylvania Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Pennsylvania Plaintiffs and the Pennsylvania Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and

have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

718.    As a direct and proximate result of CAT's breach of the implied warranty of merchantability, Pennsylvania Plaintiffs and the Pennsylvania Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

### Count 59- Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law (Easton Coach, Bailey Coach, and Pennsylvania Class)

719.    Pennsylvania Plaintiffs adopt and incorporates herein the allegations set forth above.

720.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. Tit. 73, § 201-1 *et seq*., stipulates that, "unfair or deceptive acts or practices" includes "[e]ngaging in any . . . fraudulent or deceptive conduct which create a likelihood of confusion or misunderstanding."

721.    CAT engaged in unlawful and deceptive acts in violation of Pa. Stat. Ann. Tit. 73, § 201-1 *et seq*. in selling and warranting the MY2007 CAT engines. CAT failed to give Plaintiffs and Class members any kind of sufficient notice or warning regarding the defects in the MY2007 CAT engine CRS, of which CAT knew or reasonably should have known, intending that Plaintiffs and the Class rely upon CAT's omission when purchasing vehicles containing the MY2007 CAT engines. Plaintiffs and Class Members were deceived by CAT's concealment that its MY2007 CAT engines contained a defective CRS.

722.   CAT also engaged in unlawful and deceptive practices in violation of Pa. Stat. Ann. Tit. 73, § 201-1 *et seq.* when it failed to provide the full cost to repair and replace the MY2007 CAT engines after being notified by Plaintiffs and members of the Class.

723.   As a direct and proximate result of these unfair, unconscionable, and deceptive commercial practices, Plaintiffs and the Class Members have been damaged and are entitled, pursuant to Pa. Stat. Ann. Tit. 73, § 201-1 *et seq.*, to recover actual and punitive damages as well as attorneys' fees and costs.

## SOUTH DAKOTA COUNTS

### Count 60—Breach of Express Warranty (South Dakota Class)

724.   South Dakota Plaintiff and the South Dakota Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

725.   As an express warrantor and manufacturer and merchant, CAT had certain obligations under S.D. Codified Laws § 57A-2-313, *et seq.*, to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

726.   When South Dakota Plaintiff and the members of the South Dakota Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

727.   Additionally, when South Dakota Plaintiff and the members of the South Dakota Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its

Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

728.    The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to South Dakota Plaintiff and members of the South Dakota Class.

729.    CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

730.    Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the South Dakota Plaintiff and the South Dakota Class members.

731.    Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

732.    CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

733.    South Dakota Plaintiff and the members of the South Dakota Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

734.    CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

735.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

736.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed  MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

737.    South Dakota Plaintiff and the South Dakota Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

### Count 61—Breach of Implied Warranty (South Dakota Class)

738.    South Dakota Plaintiff and the South Dakota Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

739.    CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiff and the South Dakota Class members bought or leased their

vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to South Dakota Plaintiff and the South Dakota Class members.

740.    A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to S.D. Codified Laws §57A-2-314.

741.    CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

742.    The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

743.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

744.    South Dakota Plaintiff and the South Dakota Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

745.    South Dakota Plaintiff and the South Dakota Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

746.    CAT received timely notice regarding the problems at issue in this litigation, both through presentations of Plaintiff's vehicles at CAT technicians for warranty repair work and

through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

747.    South Dakota Plaintiff and the South Dakota Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because South Dakota Plaintiff and the South Dakota Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

748.    As a direct and proximate result of CAT's breach of the implied warranty of merchantability, South Dakota Plaintiff and the South Dakota Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

**Count 62—Violations of South Dakota Deceptive Trade Practices Act (South Dakota Class)**

749.    South Dakota Plaintiff and the South Dakota Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

750.    CAT's business acts and practices alleged herein constitute deceptive acts or practices under the South Dakota Deceptive Trade Practices Act, § 37-24-6, South Dakota Codified Laws ("SDDTPA").

751.    The practices of CAT, described above, violate the SDDTPA for, inter alia, one or more of the following reasons:

a. CAT represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

b. CAT provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the MY2007 CAT Engine and its CRS exhaust emission control;

c. CAT represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d. CAT engaged in unconscionable commercial practices in failing to reveal material facts and information about the MY2007 CAT Engine, which did, or tended to, mislead South Dakota Plaintiff and the South Dakota Class about facts that could not reasonably be known by the consumer;

e. CAT failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

f. CAT caused South Dakota Plaintiff and the South Dakota Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct;

g. CAT failed to reveal material facts to South Dakota Plaintiff and the South Dakota Class with the intent that South Dakota Plaintiff and the South Dakota Class members rely upon the omission;

h. CAT made material representations and statements of fact to South Dakota Plaintiff and the South Dakota Class members that resulted in South Dakota

Plaintiff and the South Dakota Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

i.   CAT intended that South Dakota Plaintiff and the other members of the South Dakota Class members rely on their misrepresentations and omissions, so that South Dakota Plaintiff and other South Dakota Class members would purchase vehicles equipped with the MY2007 CAT Engines.

752.   The foregoing acts, omissions and practices proximately caused South Dakota Plaintiff and the other members of the South Dakota Class to suffer actual damages in the form of, inter alia, diminution in value of the vehicles equipped with MY2007 CAT Engines, and are entitled to recover such damages, together with all other appropriate damages, attorneys' fees and costs of suit.

## TENNESSEE COUNTS

### Count 63—Breach of Express Warranty (Tennessee Class)

753.   Tennessee Plaintiffs and the Tennessee Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

754.   As an express warrantor and manufacturer and merchant, CAT had certain obligations under Tenn. Code Ann. § 47-2-313 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

755.   When Tennessee Plaintiffs and the members of the Tennessee Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery

to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

756.   Additionally, when Tennessee Plaintiffs and the members of the Tennessee Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

757.   The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Tennessee Plaintiffs and members of the Tennessee Class.

758.   CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

759.   Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the Tennessee Plaintiffs and the Tennessee Class members.

760.   Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

761.   CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

762.    Tennessee Plaintiffs and the members of the Tennessee Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

763.    CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

764.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

765.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed  MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

766.    Tennessee Plaintiffs and the Tennessee Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

**Count 64—Breach of Implied Warranty (Tennessee Class)**

767.    Tennessee Plaintiffs and the Tennessee Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

768.    CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiffs and the Tennessee Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to Tennessee Plaintiffs and the Tennessee Class members.

769.    A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to Tenn. Code Ann. § 47-2-314.

770.    CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

771.    The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

772.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

773.    Tennessee Plaintiffs and the Tennessee Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

774.    Tennessee Plaintiffs and the Tennessee Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

775.    CAT received timely notice regarding the problems at issue in this litigation, both through presentations of plaintiffs' vehicles at CAT technicians for warranty repair work and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

776.    Tennessee Plaintiffs and the Tennessee Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Tennessee Plaintiffs and the Tennessee Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

777.    As a direct and proximate result of CAT's breach of the implied warranty of merchantability, Tennessee Plaintiffs and the Tennessee Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

## **TEXAS COUNTS**

### **Count 65—Breach of Express Warranty (Texas Class)**

778.   Texas Plaintiffs and the Texas Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

779.   As an express warrantor and manufacturer and merchant, CAT had certain obligations under Texas Bus. Comm. Code § 2.313 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

780.   When Texas Plaintiffs and the members of the Texas Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

781.   Additionally, when Texas Plaintiffs and the members of the Texas Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

782.   The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Texas Plaintiffs and members of the Texas Class.

783.   CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

784.   Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the Texas Plaintiffs and the Texas Class members.

785.   Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

786.   CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

787.   Texas Plaintiffs and the members of the Texas Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

788.   CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

789.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

790.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed  MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

791.    Texas Plaintiffs and the Texas Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

**Count 66—Breach of Implied Warranty (Texas Class)**

792.    Texas Plaintiffs and the Texas Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

793.    CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiffs and the Texas Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to Texas Plaintiffs and the Texas Class members.

794.    A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to Texas Bus. & Com. Code § 2.314.

795.    CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

796.    The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT

knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

797.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

798.    Texas Plaintiffs and the Texas Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

799.    Texas Plaintiffs and the Texas Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

800.    CAT received timely notice regarding the problems at issue in this litigation, both through presentations of plaintiffs' vehicles at CAT technicians for warranty repair work and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

801.    Texas Plaintiffs and the Texas Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Texas Plaintiffs and the Texas Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

802.     As a direct and proximate result of CAT's breach of the implied warranty of merchantability, Texas Plaintiffs and the Texas Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.1 through 95. . 1 through 95. . .

### Count 67—Violation of Texas Deceptive Trade Practices Act (Texas Class)

803.     Texas Plaintiffs and the Texas Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

804.     CAT's business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41 *et seq*. ("TDTPA").

805.     At all relevant times, Texas Plaintiffs and all members of the Texas Class were "consumers" within the meaning of the TDTPA.

806.     CAT's conduct, as set forth herein, occurred in the conduct of "trade or commerce" within the meaning of the TDTPA.

807.     The practices of CAT, described above, violate the TDTPA for, inter alia, one or more of the following reasons:

    a. CAT represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

    b. CAT provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the MY2007 CAT Engine and its CRS exhaust emission control;

c.  CAT represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d.  CAT engaged in unconscionable commercial practices in failing to reveal material facts and information about the MY2007 CAT Engine, which did, or tended to, mislead Texas Plaintiffs and the Texas Class about facts that could not reasonably be known by the consumer;

e.  CAT failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

f.  CAT caused Texas Plaintiffs and the Texas Class Members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

g.  CAT failed to reveal material facts to Texas Plaintiffs and the Texas Class members with the intent that they rely upon the omissions;

h.  CAT made material representations and statements of fact to Texas Plaintiffs and the Texas Class Members that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were;

i.  CAT intended that Texas Plaintiffs and the other members of the Texas Class members rely on their misrepresentations and omissions, so that Texas Plaintiffs and other Texas Class members would purchase vehicles equipped with the MY2007 CAT Engines.

808.   CAT also breached express and implied warranties to Texas Plaintiffs and the Class, as set forth herein, and is therefore liable to Texas Plaintiffs and the Texas Class for

damages under the TDTPA. CAT's actions also constitute an unconscionable action or course of conduct under the TDTPA.

809.    CAT's actions impact the public interest because Texas Plaintiffs and members of the Texas Class were injured in exactly the same way as thousands of others purchasing and/or leasing the vehicles with MY2007 CAT Engines as a result of and pursuant to CAT's generalized course of deception.

810.    Had Texas Plaintiffs and other members of the Texas Class known of the defective nature of the MY 2007 CAT Engines, they would not have purchased or leased vehicles equipped with the Engines or would have paid less for them.

811.    The foregoing acts, omissions and practices proximately caused Texas Plaintiffs and the other members of the Texas Class to suffer actual damages in the form of, inter alia, diminution in value of the vehicles equipped with MY2007 CAT Engines, and are entitled to recover such damages, together with all other appropriate damages, attorneys' fees and costs of suit.

## UTAH COUNTS

### Count 68—Breach of Express Warranty (Utah Class)

812.    Utah Plaintiff and the Utah Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

813.    As an express warrantor and manufacturer and merchant, CAT had certain obligations under Utah Code § 70A-2-313 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

814.    When Utah Plaintiff and the members of the Utah Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with

remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

815.    Additionally, when Utah Plaintiff and the members of the Utah Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

816.    The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Utah Plaintiff and members of the Utah Class.

817.    CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

818.    Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the Utah Plaintiff and the Utah Class members.

819.    Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

820.    CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

821.    Utah Plaintiff and the members of the Utah Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

822.    CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

823.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

824.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed  MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

825.     Utah Plaintiff and the Utah Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

### Count 69—Breach of Implied Warranty (Utah Class)

826.     Utah Plaintiff and the Utah Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

827.     CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiff and the Utah Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to Utah Plaintiff and the Utah Class members.

828.     A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to Utah Code § 70A-2-314.

829.     CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

830.     The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

831.    By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

832.    Utah Plaintiff and the Utah Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

833.    Utah Plaintiff and the Utah Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

834.    CAT received timely notice regarding the problems at issue in this litigation, both through presentations of Plaintiff's vehicles at CAT technicians for warranty repair work and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

835.    Utah Plaintiff and the Utah Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Utah Plaintiff and the Utah Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

836.    As a direct and proximate result of CAT's breach of the implied warranty of merchantability, Utah Plaintiff and the Utah Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with

MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

<b>Count 70—Breach of Contract/Common Law Warranty (Utah Class)</b>

837.   Utah Plaintiff and the Utah Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

838.   To the extent CAT's obligations under the Emissions Warranty and Engine Warranty are deemed not to be a warranty under the Utah Code, Utah Plaintiff plead in the alternative under common law warranty and contract law. CAT limited the remedies available to Utah Plaintiff and the Utah Class to just repairs and adjustments needed to correct defects in materials or workmanship, and/or warranted the quality or nature of those parts and services to Utah Plaintiff and the Utah Class.

839.   CAT breached this warranty or contract obligation by, among other things, failing to repair the defect in the MY2007 CAT Engines CRS exhaust emissions control.

840.   Utah Plaintiff and the Utah Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

841.   As a direct and proximate result of CAT's breach of contract or common law warranty, Utah Plaintiff and the Utah Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

<b><u>WISCONSIN COUNTS</u></b>

### Count 71—Breach of Express Warranty (Wisconsin Class)

842.   Wisconsin Plaintiffs and the Wisconsin Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

843.   As an express warrantor and manufacturer and merchant, CAT had certain obligations under Wis. Stat. § 402.313 to conform the MY2007 CAT Engine and its CRS emission control system to the express warranties.

844.   When Wisconsin Plaintiffs and the members of the Wisconsin Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Engine Warranty that it would correct any engine defect found within 24 months of the date of delivery to the first user, and cover all reasonable and customary labor needed to correct the defect, as well as reasonable towing and travel expenses.

845.   Additionally, when Wisconsin Plaintiffs and the members of the Wisconsin Class purchased and/or leased their vehicles with MY2007 CAT Engines (either as new vehicles or as used vehicles with remaining warranty coverage), CAT expressly warranted under its Emissions Warranty that the emissions system is "free of defects in material and workmanship which causes such vehicle or engine to fail to conform with applicable regulations for its useful life," and that it would provide "new, remanufactured, or repaired parts and/or components, approved pursuant to EPA Regulations, required to correct [any] defect."

846.   The defect at issue in this litigation was present at the time vehicles equipped with the MY2007 CAT Engines were sold and leased to Wisconsin Plaintiffs and members of the Wisconsin Class.

847.    CAT breached its express warranties (and continues to breach these express warranties) because it did not (and has not) corrected the defect with the MY2007 CAT Engines.

848.    Pursuant to its express warranties, CAT was obligated to correct any defect in the MY2007 CAT Engines in the vehicles owned or leased by the Wisconsin Plaintiffs and the Wisconsin Class members.

849.    Although CAT was obligated to correct the defect with the MY2007 CAT Engine CRS, none of the purported, attempted fixes to the emissions system are adequate under the terms of either the Emissions Warranty or the Engine Warranty, as they did not cure the defect.

850.    CAT and its agent dealers have failed and refused to conform the MY2007 CAT Engines to the express warranties. CAT's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

851.    Wisconsin Plaintiffs and the members of the Wisconsin Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's conduct as described throughout this Complaint.

852.    CAT received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

853.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would exclude or limit coverage for the design defect in the MY2007 CAT Engine and its CRS emission control system would be unconscionable. CAT's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. CAT possessed superior knowledge of the defective design of its CRS prior to offering the Engines for sale. CAT concealed and did not disclose this defect, and

CAT did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

854.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by CAT to limit its express warranties in a manner that would result in replacing parts into its defectively designed  MY2007 CAT Engine causes the warranty to fail its essential purpose and is null and void.

855.    Wisconsin Plaintiffs and the Wisconsin Class members have suffered damages caused by CAT's breach of its express warranties and are entitled to recover damages, including but not limited to diminution of value.

### Count 72—Breach of Implied Warranty (Wisconsin Class)

856.    Wisconsin Plaintiffs and the Wisconsin Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

857.    CAT is and was at all relevant times a merchant with respect to the MY2007 CAT Engines. CAT directly sold and marketed its MY2007 CAT Engines to vehicle manufacturers, like those from whom Plaintiffs and the Wisconsin Class members bought or leased their vehicles, for the intended purpose of installing those engines in vehicles for on-highway use. CAT knew that the MY2007 CAT Engines would and did pass unchanged from the vehicle manufacturers to Wisconsin Plaintiffs and the Wisconsin Class members.

858.    A warranty that the MY2007 CAT Engines were in merchantable quality and condition is implied by law pursuant to Wis. Stat. § 402.314.

859.    CAT impliedly warranted that the MY2007 CAT Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely providing reliable transportation.

860. The MY2007 CAT Engines were defective at the time they left the possession of CAT. The CRS emission control system was defectively designed as described herein. CAT knew of this defect at the time these transactions occurred. Thus, the MY2007 CAT Engines, when sold and at all times thereafter, were not in merchantable condition or quality and were not fit for their ordinary intended purpose.

861. By virtue of the conduct described herein and throughout this Complaint, CAT breached the implied warranty of merchantability.

862. Wisconsin Plaintiffs and the Wisconsin Class members have been damaged as a direct and proximate result of CAT's breach of the implied warranty.

863. Wisconsin Plaintiffs and the Wisconsin Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of CAT or by operation of law in light of CAT's unconscionable conduct.

864. CAT received timely notice regarding the problems at issue in this litigation, both through presentations of Plaintiffs' vehicles at CAT technicians for warranty repair work and through legal proceedings against CAT. Notwithstanding such notice, CAT has failed and refused to offer an effective remedy.

865. Wisconsin Plaintiffs and the Wisconsin Class members have had sufficient dealings with either CAT or its agents (authorized CAT repair facilities) to establish privity of contract. Notwithstanding this, privity is not required in this case because Wisconsin Plaintiffs and the Wisconsin Class members are intended third-party beneficiaries of contracts between CAT and its dealers; specifically, they are intended beneficiaries of CAT's implied warranties. The dealers were not intended to be the ultimate consumers of the MY2007 CAT Engines and

have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

866.    As a direct and proximate result of CAT's breach of the implied warranty of merchantability, Wisconsin Plaintiffs and the Wisconsin Class members were caused to suffer economic damage, including loss attributable to the diminished value of their vehicles equipped with MY2007 CAT Engines, as well as the monies spent and to be spent to repair and/or replace their vehicles.

**Count 73—Violation of Wisconsin Deceptive Trade Practices Act (Wisconsin Class)**

867.    Wisconsin Plaintiffs and the Wisconsin Class incorporate the allegations set forth above in paragraphs 1 through 95 as if fully set forth herein.

868.    CAT's business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the Wisconsin Deceptive Trade Practices Act, Wisc. Stat. § 100.18 *et seq*. ("WDTPA").

869.    At all relevant times, Wisconsin Plaintiffs and all members of the Wisconsin Class were "consumers" within the meaning of the WDTPA.

870.    CAT made, published, disseminated, circulated, and/or placed before the public, and/or caused to be made, published, disseminated, circulated, or placed before the public, advertisements, announcements, statements, and representations to the public relating to the purchase, sale, and use of the MY2007 CAT Engine, that contained assertions, representations and statements of fact concerning the qualities and characteristics of the MY2007 CAT Engine.

871.    Such advertisements, announcements, statements, and representations were made, published, disseminated, circulated, and/or placed before the public pursuant to CAT's intent: (a) to sell, distribute and increase the sales of MY2007 CAT Engine; and/or (b) to induce the public

to enter into contracts and/or obligations relating to the purchase, sale and use of vehicles equipped with MY2007 CAT Engines.

872.   CAT's aforementioned assertions, representations and statements of fact concerning the qualities and characteristics of the MY2007 CAT Engine were untrue, deceptive and misleading, in violation of the WDTPA, as described throughout this Complaint.

873.   The practices of CAT, described above, violate the WDTPA for, inter alia, one or more of the following reasons:

a.   CAT represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

b.   CAT provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the MY2007 CAT Engine and its CRS exhaust emission control;

c.   CAT represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d.   CAT failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

e.   CAT caused Wisconsin Plaintiffs and the Wisconsin Class Members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

f.   CAT made material representations and statements of fact to Wisconsin Plaintiffs and the Wisconsin Class Members that resulted in them reasonably

believing the represented or suggested state of affairs to be other than what they actually were;

g.   CAT intended that Wisconsin Plaintiffs and the other members of the Wisconsin Class members rely on their misrepresentations and omissions, so that Wisconsin Plaintiffs and other Wisconsin Class members would purchase vehicles equipped with the MY2007 CAT Engines.

874.   CAT's actions impact the public interest because Wisconsin Plaintiffs and members of the Wisconsin Class were injured in exactly the same way as thousands of others purchasing and/or leasing the vehicles with MY2007 CAT Engines as a result of and pursuant to CAT's generalized course of deception.

875.   Had Wisconsin Plaintiffs and other members of the Wisconsin Class known of the defective nature of the MY 2007 CAT Engines, they would not have purchased or leased vehicles equipped with the Engines or would have paid less for them.

876.   The foregoing acts, omissions and practices proximately caused Wisconsin Plaintiffs and the other members of the Wisconsin Class to suffer actual damages in the form of, inter alia, diminution in value of the vehicles equipped with MY2007 CAT Engines, and are entitled to recover such damages, together with all other appropriate damages, attorneys' fees and costs of suit.

## DEMAND

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Classes, respectfully request judgment against CAT:

(a)   Certifying the Classes and appointing Plaintiffs and their counsel to represent the Classes;

(b)    Ordering CAT to provide notice to the Classes of the MY2007 CAT Engine defects;

(c)    Ordering CAT to promptly repair and/or replace all MY2007 CAT Engine defects free of charge;

(d)    Awarding all permissible damages;

(e)    Awarding pre-judgment and post-judgment interest;

(f)    Awarding statutory damages as permitted by law;

(g)    Awarding attorneys' fees and costs; and

(h)    Awarding such other relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Dated:  December 23, 2014        Respectfully submitted,

By:  /s/Natalie Finkelman Bennett
    James C. Shah
    Natalie Finkelman Bennett
    SHEPHERD, FINKELMAN, MILLER
    & SHAH, LLP
    475 White Horse Pike
    Collingswood, NJ 08107
    Telephone: 856-858-1770
    Facsimile: 856-858-7012

    James E. Cecchi
    Lindsey H. Taylor
    CARELLA, BYRNE, CECCHI,
    OLSTEIN, BRODY & AGNELLO,
    P.C.
    5 Becker Farm Road
    Roseland, NJ 07068
    (973) 994-1700

Theodore J. Leopold
Leslie Kroeger
COHEN MILSTEIN
  SELLERS & TOLL PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
(561) 515-1400

Richard J. Burke
Zachary A. Jacobs
QUANTUM LEGAL LLC
513 Central Avenue, Suite 300
Highland Park, IL 60035
(847) 433-4500

*Interim Class Counsel*

Jonathan Shub
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
(215) 564-2300

Steven R. Jaffe
Mark Fistos
FARMER, JAFFE, WEISSING,
 EDWARDS, FISTOS & LEHRMAN,
P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
(954) 524-2820

Andrew N. Friedman
Douglas J. McNamara
COHEN MILSTEIN SELLERS
  & TOLL, PLLC
1100 New York Avenue, NW
Suite 500 East
Washington, DC 20005
(202) 408-4600

Daniel R. Karon
Karon LLC
700 W. Saint Clair Ave.
Cleveland, OH 44113
(216) 551-9175

Scott R. Shepherd
SHEPHERD, FINKELMAN, MILLER
&SHAH, LLP
35 E. State Street
Media, PA  19063
Telephone: 610-891-9880
Facsimile: 610-891-9883